## Louisville & Nashville R. R. Co. v. Bays' Admr.

(Decided February 22, 1911.)

## Appeal from Knox Circuit Court.

1. Railroads—Cities and Towns—Lookout Duty—Reasonable Warning Given of Approach of Trains.—A lookout duty on railroad engines and cars exists in incorporated cities and towns and other places, where the presence of persons on the track should be reasonably anticipated. Where the lookout exists the engine and cars must be run at such speed and under such control that the lookout will be servicable, and a lookout is not sufficient where the person looking out is not in a position to see. Reasonable warning of the approach of the train must be given and the backing of the cars, or an engine, in the dark without a light in front in such locality, is negligence.

2. Passenger Reaching Station—Relation Ceases.—While one was a passenger when he reached his station, his right as a passenger ceased after he had a reasonable time to leave the station. He and his friends could not remain under the station platform indefinitely as a passenger.

3. Tresspassers on Track—Risk Assumed.—It has been well said that a railroad track is a signal of danger, and that those who trespass upon it take the risk, unless it is at a point where lookout duty is imposed. This must be especially true in a much used yard of a railroad company, where from the necessity of the business the engine and cars must be constantly moved about.

JAMES D. BLACK, J. W. ALCORN and BENJAMIN D WARFIELD for appellant.

B. B. GOLDEN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

Four Mile is a station on the Louisville & Nashville railroad about seventeen and one-half miles west of Middlesboro. In September, 1907, J. Wesley Bays, and a number of others, went from Four Mile to Middlesboro, Bell County is dry, but whiskey is sold at Middlesboro. The party left Middlesboro for Four Mile about ten o'clock at night on the regular passenger train. Bays had a half gallon of whiskey, and the others of the party had some more, some less. The train reached Four Mile about 11 o'clock, or a little before. When they got off the train at Four Mile it was very dark and rainy. They lived several miles from the station, and after the train

left they all remained under the station platform shed. The county road ran just south of the depot, and only a few feet from it. North of the depot and about as far from it as the county road, is the main track of the railroad, and a few feet further north is a side track, called in the record the loading track. About thirty feet south of the loading track, and opposite the shed is a restaurant. West of the restaurant and adjoining it is a store, and the postoffice. About 12:50 that night, a switch engine pushed some cars in on this loading track past the depot up towards the western end of that track. Shortly after this train was pushed in, Bays said to a friend that he would go over to the restaurant and get them a lunch. He then went down the steps of the platform and started across toward the restaurant. Two other men about the same time started across following Bays to get them a watermelon. As these men got near the loading track, the switch engine which had been cut loose from the cars it had taken in, was backed out and dashed past them, just before they reached the track. As the engine passed them, they saw the back of a man on the far side of the track whom they took to be Bays. After the engine passed they went on into the restaurant, not supposing that Bays was hit. Not long afterward, however, Bays' body was found on the loading track about 75 feet east of where he was last seen, and from all the circumstances it may fairly be inferred that he was caught by the engine and carried by it to the point where he was found and there run over. This action was brought by the administrator of Bays against the railroad company to recover for his death on the ground that he was killed by reason of its negligence. The proof for the plaintiff on the trial by the members of the party who testified was to the effect that there was no light on the rear of the engine as it backed in, that no signal was given of its approach, and that it came very fast. The proof for the defendant was to the effect that the engine had a headlight in front and a headlight on the back of the tender; that the bell of the engine was ringing, and that it was running about eight or ten miles an hour. The weight of the evidence as to the light on the tender and the ringing of the bell is with the defendant; but its evidence shows that there was nobody on the rear of the tender as it was backed; that the fireman was ringing the bell; that the engineer was at the throttle, and that neither of them could see a person on the track over the coal that

was piled on the tender. The circuit court, refusing to instruct the jury peremptorily to find for the defendant, instructed them in substance that if the place where Bays was struck, was a place where the presence of persons on the track should be anticipated, it was the duty of the defendant to give reasonable notice of the approach of its engine, maintain a proper lookout, and run the engine at such speed as ordinary care for the safety of such persons required. The jury returned a verdict in favor of the plaintiff for $5,500, on which the court entered judgment. The defendant appeals.

The only question we deem it necessary to consider on the appeal is whether a peremptory instruction to find for the defendant under the evidence should have been given. This court has in a number of cases held that a lookout duty on railroad engines and cars exists in incorporated cities and towns and other places where the presence of persons on the track should be reasonably anticipated; also that where the lookout duty exists, the engine and cars must be run at such speed and under such control that the lookout will be serviceable in case danger is seen, and that a lookout is not sufficient where the person looking out is not in a position to see; that reasonable warning of the approach of the train must be given, and that the backing of the cars or an engine in the dark without a light in front in such localities is negligence. (Shelby v. C., N. O. & T. P. R. R. Co., 85 Ky., 224; Conley v. C., N. O. & T. P. R. R. Co., 89 Ky., 402; Gunn v. Felton, Receiver, &c., 108 Ky., 561; L. & N. R. R. Co. v. Lowe, 118 Ky., 260; I. C. R. R. Co. v. Murphy, 123 Ky., 787, and cases cited.) The court has also held in a number of cases that the railroad company owes no duty to trespassers on its tracks at other places, except to avoid injuring them after their danger is discovered. (Brown v. L. & N. R. R. Co., 97 Ky., 228; L. & N. R. R. Co v. Redman, 122 Ky., 385; C. & O. R. R. Co. v. Nipp, 125 Ky., 49.)

It is plain that the danger to Bays was not discovered, and that if he was a trespasser no recovery can be had for his death unless the place at which he was struck was one where a lookout duty was required. While Bays was a passenger, when he reached Four Mile, his rights as a passenger ceased after he had had a reasonable time to leave the station. He and his friend could not remain under the station platform indefinitely

as passengers. The accident occurred about two hours after he reached the station, and they were not then under the shed as passengers. (I. C. R. R. Co. v. Laloge, 113 Ky., 896, 6 Cyc., 541-542; Sandifer v. L. & N. R. R. Co., 28 R., 464.) They had no more right then to use the tracks of the railroad company than if they had never been passengers on the train. So the case comes to this: Was he at a point where the railroad company owed him a lookout duty? The proof for the plaintiff on the trial showed that Four Mile is a straggling hamlet unincorporated, without a street or an alley, consisting of about 20 or 25 houses; that a spur track turns off there and goes up Four Mile Creek to some coal camps about three miles off where a thousand or twelve hundred men are employed; that another spur track turns off near there which goes to the Jellico mines some miles further away, and across Cumberland river where a number of miners are also employed; that from both of these mines, persons come to Four Mile to take the train and many of them in coming walk along the railroad tracks to the station; that about a thousand tickets a month are sold at the station, and that the tracks about the station and approaching it are much used by pedestrians; but this proof as to the presence of persons on the track relates mainly to train time, ordinary business hours, and a reasonable time thereafter. There is no proof of the use of the track by pedestrians at a late hour of the night to any considerable extent. The restaurant referred to usually closed at 10 o'clock. On the night in question it had remained open because it was pay day at the mines, and some miners who had come in had remained there eating, etc., on account of the storm. We think the evidence well warrants the conclusion that about train time there was such a use of the tracks about the station that a lookout duty was then required as to persons coming to the trains or otherwise lawfully using the station grounds; but here the passenger train had passed two hours before and there was no train to stop at this station for a number of hours. The proof tends to show that the railroad tracks all about the station were used by the people, and there is nothing in the evidence to show that the point where Bays was struck was any more used than other points about the station, or near it, except the fact that the restaurant and post office were near there. Most of the houses in the place were on the same side of the railroad as the restaurant, but the depot was

on the other side and there was of course much passing from or to it about train time, and more or less such passing during business hours at the depot, but not in the late hours of the night. By reason of the fact that the coal from the mines referred to was brought to Four Mile and there put on the trains, the side tracks and yards there were much used by the railroad company. The point where Bays was struck was in the yard. It has been well said that a railroad track is a signal of danger, and that those who trespass upon a railroad track, take the risk unless it is at a point where a lookout duty is imposed. This must be especially true in a much used yard of a railroad company, where from the necessity of the business, the engines and cars must be constantly moved about. So the case turns on the question whether on the facts shown the railroad company owed Bays a lookout duty. The answer to the question must depend upon the law as it has been heretofore laid down by this court in the cases decided by it.

In L. & N. R. R. Co. v. Howard, 82 Ky., 214, the intestate lost his life near the town of Chicago in Marion county, while walking along the railroad at a late hour of the night, by reason of the fact that no lookout was kept on a train coming up behind him. Holding that there could be no recovery, the court said:

"In the case before us the railroad company had the exclusive right to the use of the road at the place where the appellee's intestate lost his life, and we see no reason for making the company responsible, unless it should appear that those in charge of the train, after discovering the condition and danger of the party exposed, could, by the exercise of the proper care, have avoided the injury."

In Ky. Central R. R. Co. v. Gastineau, 83 Ky., 119, where the deceased lost his life in the yard of the company at Lexington, the court again said:

"A railroad company has the right to the exclusive use and occupation of its yard or track, except at crossings or such places as the public are, by law, authorized to use; otherwise, it could not properly perform its duties to the public. It is not required to anticipate the intrusion of others; and the one who enters upon them without right, does so at his peril."

In Shackelford's Admr v. L. & N. R. R. Co., 84 Ky., 43, the deceased was employed at a section house on the

railroad, and there was a path leading across the railroad to the section house used by the persons living there. The deceased while crossing the railroad on this path was struck by an approaching train which failed to keep a proper lookout or to give any signals of its approach to the county road crossing near by. Sustaining the circuit court in giving the jury a peremptory instruction to find for the defendant, the court said:

"She was not injured, however, at a place where the public had a right to be, but at a point upon the track where the right of the company was exclusive, and where a reckless use would not necessarily endanger the lives of persons as would be the case in a town or upon a public thoroughfare. The speed of the train under such circumstances can not constitute neglect as to one who voluntarily places himself upon the track, and where he has no right to be, and thus carelessly exposes himself to injury.

"Railroad trains must give the customary signals at public places or public crossings. The failure to do so is negligence; but this is required for the safety of passengers, trainmen and the public using, and who have the right to use, the track at such public ways, and not for the purpose of protecting those who, as trespassers, may be crossing or using the track elsewhere."

In McDermott v. Ky. Cen. R. R. Co., 93 Ky., 413, the plaintiff had been injured in the yards at Paris, Kentucky, by a backing train moved at a rapid rate of speed without any warning of its movement; sustaining the circuit court in instructing the jury peremptorily to find for the defendant, the court said:

"Accordingly, as moving engines and cars to and fro in the yard of a railroad company is indispensable to safe and proper conduct of its business, it should be no more obliged to specially look out for presence of those who may go there without right than for trespassers on the main track away from the yard. For to require the bell rung or whistle blown at every movement of an engine in the company's yard to and from a coal-chute, water-tank or turn-table, however slowly or short the distance it might have to go, or that an extra employe be placed upon every backing engine simply to warn or look out for presence of persons having no right or reasonably expected to be there, when not at all necessary for safety of persons or property legally entitled

to care and protection by the company, would be unreasonable and oppressive."

In Brown v. L. & N. R. R. Co., 97 Ky., 228, the deceased was killed within the corporate limits of the city of Louisville, but at a point where the territory had not been laid off into streets, and where there was no density of population. There was evidence that the train was not properly manned or equipped, and by reason of this the man was killed. This court holding that the peremptory instruction to the jury was proper, said:

"We think the better doctrine is, that simple acquiescence on the part of a railroad company in the use of its track in this way does not confer authority or right, nor amount to license so to use; that decedent being a trespasser and a wrongdoer at the time of his injury, had no right to complain of the size or weight of the train, nor of its speed (further than it should not be run in a city at a reckless and dangerous rate), nor of its machinery or brakes, that they were insufficient, nor that it was not properly manned."

The rule laid down in these cases has been followed in many subsequent cases. In Oatts v. C., N. O. & T. P. R. R. Co., 15 R., 87, the injury occurred at Burnside station. Oatts was standing on the railroad track trying to arrange some horses which he had loaded on a car on the side track. A car was pushed down the track by an engine without warning by bell or whistle, and injured him. The peremptory instruction which was given by the circuit court was sustained. In Hoskins v. L. & N. R. R. Co., 17 R., 78, the deceased was killed within the corporate limits of Pineville, in what was called Wasaota, by a train running very rapidly and giving no warning of its approach. A peremptory instruction was given the jury by the circuit court, and this, on appeal, was affirmed. In Gherkins v. L. & N. R. R. Co., 17 R., 201, the intestate was killed at Highland Park, a station a few miles south of Louisville by a hand car running very rapidly up behind him without warning while a freight train was passing on the other track. The court said:

"It is manifest that the deceased was at the time he was injured, a trespasser, in a legal sense, upon the property of appellee, to the exclusive use of which it was entitled, and that there was no public crossing at or near the place where the accident occurred. It is the settled doctrine of this court that nothing short of a failure on part of the company to exercise reasonable diligence in

avoiding the accident after discovery of the danger to the trespasser will make the company liable.''

In L. & N. R. R. Co. v. Wade, 18 R., 549, the injury occurred at the station of Woodburn in Warren county, a much larger place than Four Mile. The plaintiff while walking along the railroad track in Woodburn, was struck by a piece of timber projecting from a passing freight train, and injured. On the authority of the cases above cited it was held that there being no proof to show that the servants of the railroad company knew of the dangerous condition of the timber or the peril of the plaintiff, the court should have instructed the jury peremptorily to find for the defendant. In Lyons' Admr. v. I. C. R. R. Co., 59 S. W., 507, the intestate was killed at a late hour of the night near Mayfield, Kentucky. Affirming a judgment dismissing the plaintiff's petition, we said:

''There was no reason for appellee's employes in charge of the train anticipating the presence of anybody at this remote point at that time of night.''

In Hoback v. Louisville, et al., R. R. Co., 99 S. W., 241, which was a similar case, we again said:

''Even though appellee knew that its track, at the place in question, was used by people in that locality, and had been so used in passing from their homes to the neighboring villages, yet this use, so far as the proof shows, had been confined principally to Sundays and to reasonable hours in the day time, and appellee would certainly have no right to expect nor be required to be on the lookout for trespassers upon its track at the dead hour of midnight.''

In Gregory v. L. & N. R. R. Co., 79 S. W., 238, the plaintiff was hurt at Artemus by being struck by a train on a foggy morning, when, as he claimed, no lookout was maintained. In C. & O. R. R. Co. v. See, 79 S. W., 253, the injury occurred at Normal, where the land had been laid out in streets but had not been built up; in both of these cases under the previous rulings of the court, it was held that there could be no recovery. In Brackett v. L. & N. R. R. Co., 111 S. W., 710, we had before us an injury occurring at this same station of Four Mile. In that case there were two cuts of cars standing on the loading track with a space of about three feet between them, very near the point where the deceased here was killed. While the intestate was passing through this space, a train backed in on the side track, and ran against

one of the cuts of cars, causing it to close up the space, thus catching and killing her. It was held that there could be no recovery as the space was not left for people to pass through and she was a trespasser.

We do not see that this case can be distinguished from those cited. If the railroad company did not owe the deceased a lookout duty, it violated no duty which it owed him. If it owed him a lookout duty, it owed a like duty at all points in its yard, or near its yard; for under the evidence we do not see that a line could be drawn anywhere and it could be said that a lookout duty existed on one side of the line and not on the other. At this late hour of the night, it can not be said that the railroad company was under a duty to anticipate the presence of persons on its tracks, and under the evidence the court should have instructed the jury peremptorily to find for the defendant.

Judgment reversed and cause remanded for further proceedings consistent herewith.

Whole court sitting.