## Louisville & Nashville Railroad Company v. Hobbs.

(Decided October 7, 1913).

## Appeal from Nelson Circuit Court.

1. Railroads—Duty to Keep Station Premises and Approaches Thereto in Safe Condition.—A railroad company is under a duty to maintain its depot grounds and premises in reasonably safe condition for use by persons who hold the relation to it of passengers, and this duty extends to approaches or roads that the company has set aside or established for the use of the public having business with it.

2. Railroads—Passengers—When Relation of Terminates.—When a passenger has safely alighted from a train at a station, and has left the depot grounds and premises, his relation as a passenger has terminated and the company does not owe him the duty it owes to passengers.

3. Railroads—Licensees Not Passengers.—Where a person, who was a passenger on a train, alighted at the depot, and, leaving the depot premises, started to walk home over a path on the right of way of the company that had been habitually used by the general public for a number of years, he became, after leaving the depot premises, a mere licensee.

4. Railroads—Duty to Licensees.—A railroad company is under no obligation to keep its premises in repair, or long-existing pits or excavation protected for the benefit of licensees, as, generally speaking, licensees must take premises as they find them. But where the public generally have used, for such a length of time, the tracks and premises of a railroad company as to put on it the duty of taking notice of their presence, it must exercise care by keeping a lookout and giving warning not to injure them in the movement of its trains.

5. Railroads—Facts Stated.—The appellee, after alighting from a passenger train at a station, started home on the right of way of the company over a path that had been used by the general public for many years. This path was between the railroad track and an excavation that had been made for a turntable. In the darkness of the night she lost her way and fell into the excavation, which was 345 feet from the depot. Held, that she was not a passenger and the company did not owe her the duty of keeping the way lighted or of protecting the excavation by lights or barriers.

BENJAMIN D. WARFIELD, JOHN S. KELLY for appellant.

N. W. HALSTEAD, P. J. BEARD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee, a colored woman, owned and lived in a small house about 525 feet north of the depot of appellant in the little town of Bloomfield, Kentucky. The house was situated about 60 feet west of appellant's right of way, and appellee had been occupying it as her home for 30 years or more. On the opposite side of the railroad railroad from appellee's house, and about 345 feet north of the depot, the appellant company had a turntable, which had been in use for probably 25 or 30 years, and that was operated in an excavation about 60 feet in diameter and about 5 feet deep. From the rail nearest the turntable to the edge of the turntable was 15 1-2 feet. There was a well defined path or passway between the railroad track and the turntable, extending from the depot to a point beyond the turntable, over which a large number of people, who lived or were engaged in business in the neighborhood of appellee's house traveled in going to and from the depot and to and from the town, school, and other places. This passway, which was on the right of way of the railroad, had been so used by the general public for perhaps 30 years, with the knowledge and acquiescence, if not the consent of the railroad company and so it may safely be said that persons using this passway were licensees and entitled to the protection afforded this class of travelers.

On December 29, 1910, appellee arrived at the Bloomfield station on a passenger train about eight o'clock at night. The night was very dark and a drizzling rain was falling. There were no lights about the depot except the lanterns of the trainmen, the lights in the cars and in the station building, nor were there any lights between the depot and the turntable or between the depot and appellee's residence. When appellee got off of the train, she started, in the usual way, to go to her home, and in so doing walked on the passway or path, as she and others who lived in her vicinity had been for years in the habit of doing. When she reached a point opposite the turntable, she lost her bearings and got out of the well-beaten pathway and fell into the turntable excavation, which was not protected by lights or barriers of any kind, thereby receiving severe injuries. To recover damages for the injuries so sustained, she brought this suit, and on the trial recovered a judgment for fifteen hundred dollars. A reversal of this judgment is asked chiefly upon the ground that the jury should have been

directed to return a verdict in favor of the appellant company.

For appellee the argument is made that as she had been a passenger on the train from which she alighted a few minutes before the accident and was on her way home from the depot walking on a path that was used by the public generally and by persons going to and from the depot on business, she was yet a passenger and entitled to the protection afforded passengers, and, therefore, it was the duty of the company to have its track and premises at the place where she was injured reasonably lighted, or to have its turntable pit reasonably protected for her safety.

If appellee at the time she received the injuries complained of occupied the attitude of a passenger, there would be much force in the argument that the company should have protected in some reasonably, sufficient way the turntable excavation, as it is well settled that a railroad company is under a duty to maintain its depot grounds and premises as well as approaches thereto in reasonably safe condition for use by persons who hold the relation to it of passengers. Thompson on Negligence, Vol. 3, sec. 2678-2716. Hutchinson on Carriers, Vol. 2, Sec. 935-937; Southern Railway Co. v. Goddard, 121 Ky., 567; L. & N. R. R. Co. v. Turner, 137 Ky., 730.

But we think it clear that when appellee received the injuries complained of she was not a passenger, and, therefore, the company did not owe her the duty that it owed to passengers. She had safely alighted from the train at the station and was 345 feet from the station on her way home when injured and was not walking on a way set apart for the use of pessengers. Under these circumstances her rights as a passenger and the duty that the railroad company owed her as a passenger terminated when she left the depot grounds and premises. Glenn v. Lake Erie & Western R. R. Co., 165 Ind., 659, 2 L. R. A. (n. s.), 872; Sturgis v. Detroit Ry. Co., 72 Mich., 619; Skottowe v. Oregon Short Line R. R. Co., 22 Oregon, 430, 16 L. R. A., 593.

The turntable was not on the depot premises or adjacent thereto or on grounds set aside by the company for the use of the depot or of persons going to the depot to take trains or coming from the depot after leaving trains. If it had been a mile from the depot and situated as in this case by the side of a much used passway on the right of way of the company, the duty and liability

of the company would be the same as it is in this case, no greater and no less. In other words, the company owed her no higher duty than it would have owed her if she had not been a passenger on the train but had been on her way home from a visit to a neighbor or from attendance on some other errand of business or pleasure.

A different rule would be applied if the company had established and set apart this passway as a route leading to its depot for the use and benefit of persons having occasion to go to and from its depot, and had thereby extended to them an invitation to use the way for this purpose. When a company has set aside or established an approach to its depot for the use of the public having business with it, it assumes the duty of keeping the same reasonably safe for the uses to which it was dedicated. In other words, its duty is substantially the same as it is in relation to its station and station grounds. We so held in Chesapeake & Ohio Ry. Co. v. Meyer, 119 S. W., 183, in which we said, in speaking of the right of a person having business with the company to recover damages occasioned by its failure to keep an approach to its station free from defects:

"Having provided this road for the use of passengers and other persons having business with the company that authorized them to use it, it was under a duty to keep it in a reasonably safe condition for travel." See also Hutchinson on Carriers, Vol. 2, Sec. 937; Cross v. Lake Shore & Michigan Southern Ry. Co., 69 Mich., 363; 13 Am. St. Rep., 399.

But no part of the path appellee was traveling, after she left the premises immediately about the depot, had been set apart by the company for the use of the public or for the use of persons having business at its depot buildings, nor had it invited the public to use this passway. It was used by people generally in going to stores, to school, in visiting and on other purposes of business and pleasure, as well as by persons in going to and from the depot. The use of this way by the public was in its origin a trespass but by continually using it without objection on the part of the company, the public using it came to have what is called a license to use it, and the company thereby became charged with the duty railroad companies owe to licensees.

And so we think that appellee's right to recover, if any there be, must rest entirely on the naked grounds that the company, on account of the long-continued and

habitual use of this passway by the general public, assumed the duty of keeping it lighted in some way or of having the turntable protected by lights or barriers, so that persons using the passway might not thoughtlessly or inadvertently fall into the excavation as appellee did. If the company did not owe to appellee as a licensee this duty, then she is not entitled to a recovery.

Reverting for a moment to the facts, we find that there was ample room between the track and the turntable to walk with perfect safety, and the well-beaten path used by travelers was probably six or eight feet from the edge of the turntable. Appellee had walked on this path for many years, and was thoroughly well acquainted with the location of the turntable in which no change had been made since it was built. Under these circumstances, if the railroad company owed to appellee the duty of having its premises at this place lighted or its turntable protected by barriers, it would likewise owe a duty to every licensee using its tracks and premises at any place on its line of road to protect them from the danger of falling into long established or existing pits or excavations that might happen to be near the line of travel, however remote the place they might be from stations and premises set apart by the company for the use of persons having business with it as passengers or otherwise.

It will be readily perceived that to impose a duty like this on a railroad company would virtually require it, to protect all places of possible danger along every part of the right of way that was used by such a number of the public as to charge the company with the duty of taking notice of their presence and would subject the company to the care and expense of keeping its premises in repair for the use of persons having no business with it, but who had become entitled by acquiescent use to a certain measure of protection to be later referred to. In Sweeney v. Old Colony & Newport Ry. Co., 10 Allen, 368, 87 Am. Dec., 644, in speaking of the rights of licensees and the measure of protection the licensor is under a duty to afford, the court said,

"So a licensee who enters on premises by permission only without any enticement, allurement or inducement being held out to him by the owner or occupant, cannot recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk and enjoys the license subject to its concomitant perils. No duty is im-

posed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure.   *   *   * The general rule or principle applicable to this class of cases is that an owner or occupant is bound to keep his premises in a safe and suitable condition for those who come upon and pass over them, using due care, if he has held out by invitation, allurement or inducement, either express or implied, by which they have been led to enter thereon. A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner or person in possession to provide against the danger of accident   *   *   * A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability; but if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for such use, and for a breach of this obligation he is liable in damages to a person injured thereby.

The principles announced in this instructive case were approved by this court in Johnson v. Paducah Laundry Co., 122 Ky., 369, and again in Indian Refining Co. v. Moberly, 134 Ky., 822, in which the court, after reviewing a number of cases, said "that a licensee in entering upon the premises of another does so at his peril, the owner of the premises being liable only for injuries resulting from willful acts."

In Fox v. Warner-Quinlan Asphalt Co., 204 N. Y., 240, 28 A. & E. Ann. Cases, 745, we find a case very much like this. The licensee was injured by falling, in the nighttime, into an unguarded gravel pit excavated by the side of the route over which the public had been accustomed to travel on foot and in vehicles for a number of years, not as a matter of right but as licensees, with the passive consent or acquiescence of the owner of the premises. The licensee brought suit against the owner of the premises to recover damages for the injuries sustained, and in denying his right to recover, the court said:

"The principle is now well settled by repeated adjudications in this country and in England that where a person goes upon the premises of another without invitation but simply as a bare licensee, and the owner of the property passively acquiesces in his coming, if an in-

jury is sustained by reason of a mere defect in the premises, the owner is not liable for negligence; for such person has taken all the risk upon himself.'' To the same effect are Evansville & Terre Haute R. R. Co. v. Griffin, 100 Ind., 221, 50 Am. Rep., 783; Means v. Southern California Ry. Co., 144 Cal., 473, 1 A. & E. Ann Cases, 206. Many other like cases might be cited, but these are sufficient to illustrate the prevailing rule to which, so far as our investigation has extended, there is no exception. Nor do we perceive any sound reason why these general principles subject to an exception connected with the movement of trains should not be applied in treating of the rights of licensees on railroad tracks and premises, where the tracks and premises are not set apart or dedicated by the railroad company to the use of persons doing business with it at stations or other places. If the public generally for their own convenience use the tracks and premises of a railroad company without any legal right to do so, but merely by the sufferance of the company, and this use continues for such length of time as to put upon the company in the movement of its trains the duty to anticipate their presence and exercise care not to harm them by what may be termed affirmative acts, this, we think, should be the full extent of the duty assumed by the company in protecting them from accidents that result from their own thoughtlessness, inadvertence or want of care. The company should not be required to safeguard every place of possible danger on its right of way for the protection of persons who must generally take the premises as they find them nor should it be liable for an accident that happens to a mere licensee who accidentally or thoughtlessly falls into some defective or exposed place on its premises.

There is, however, one exception recognized by the courts, and especially by this court, to the general rule that the licensor owes to the licensee no duty except to avoid wanton injury to him, and that is the duty incumbent upon railroad companies in the movement of their trains to take notice of the general and habitual use that the public make at certain places of their tracks and premises and to take care not to harm them by the failure to keep a lookout and to give timely warning of the movement of their trains. The case of Southern Railway in Ky. v. Sanders, 145 Ky., 679, may be referred to as an illustrative

case on the subject of the rights of licensees on railroad tracks and premises and the obligation the company owes to them in the operation of its trains. But there is no similarity between that class of cases and this one. There is quite a difference between affirmative or positive acts of negligence springing from a failure to discharge a duty in the operation of trains and mere passive or negative acts of negligence that grow out of the failure to protect against dangers that may befall a licensee who walks or falls into a pit or excavation that the company has made for use in the conduct of its business and with the location of which the licensee is familiar. For example, if appellee had been injured by the movement of a train that was being operated without lights or signals or warning of its approach, it might well be said that the company should be required to respond in damages, because the long continued use of the premises by the public carried with it the duty on the part of the company to prevent affirmative injury by the movement of trains or cars. In such a case the recovery is allowed upon the grounds that the person injured has not committed any act of negligence and the injury was caused by the negligence of the company.

The licensor who has on his premises a stationary object that might inflict injury upon a careless or inattentive licensee who came in contact with it, or who has on his premises an excavation or pit used in connection with his business, into which a thoughtless licensee might fall, is not to be held to the same degree of care or burdened with the same duty as the licensor who uses in his business a dangerous, movable agency like an engine or cars, the immediate presence of which the licensee cannot many times know of in the absence of notice or warning, and it is well that a distinction should be made in the particular named between the duty and liability of a railroad company in the movement of its trains to licensees and its duty toward them in other respects not connected with the operation of its trains or any other movable agency.

Here the turntable, into which appellee fell, was stationary and had been there many years in the same condition. Appellee was not injured by any affirmative act of negligence on the part of the company or because in the construction of the turntable or its operation the company did anything it was not authorized to do. Her injuries resulted from her own want of care; from her

failure. to take notice of .conditions she had long been familiar with.

. . The case of Rager v. L. & N. R. R. Co., 137 Ky., 811, relied on by appellee, is not in conflict with the views we have expressed, as, .under the facts stated in the opinion, it comes within the line of cases holding railroad companies liable for affirmative acts of negligence in dealing with licensees.

· We think the appellee failed to make out a case of actionable negligence on the part of the company, and, therefore, the court should have directed a verdict in its favor. The judgment is reversed, with directions to proceed in conformity with this opinion if there is a retrial.