## C., N. O. & T. P. R. R. Co., et al. v. Owsley.

(Decided May 27, 1921.)

### Appeal from Lincoln Circuit Court.

1. Railroads—Use of Tracks by Public—Trespassers.—The mere use of a railroad track by the public does not convert the users from trespassers into licensees except when and where the use is habitual by such large numbers of people as to put upon the company the duty of anticipating their presence upon the track.

2. Railroads—Use of Tracks by Public—Rule as to Such Use.—But that rule has no application to places on its tracks where the company has not the exclusive right of way, but enjoys it jointly with the general public or a section thereof such as at a public crossing or where the track is laid longitudinally in a street or public way.

3. Railroads—Presence of Persons on Track.—Where a railroad company built a spur track, partly on its own land and partly on the land of a mill company, over an open passway from a public street to a mill, which was the only means of reaching the mill and same was used constantly and habitually by members of the public having business at the mill, the company in backing a train upon the track was bound to anticipate the presence thereon of persons going to the mill on business and to maintain a lookout to avoid injuring them.

4. Railroads—Lookout Duty—Directed Verdict.—The defendant is not entitled to directed verdict even if plaintiff is guilty of contributory neglect as matter of law, if defendant owed her a lookout duty and her peril could have been discovered and her injury avoided.

5. Damages—Instructions.—It is error to submit an element of damages not supported by evidence and prejudicial where the verdict is otherwise excessive.

6. Damages—Excessive Damages.—$1,500 damages is excessive where the evidence shows plaintiff was probably more frightened than hurt and there is no evidence of permanent injury.

JOHN GALVIN and K. S. ALCORN for appellants.

EMMETT PURYEAR and T. J. HILL for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

McKinney is a town of about five hundred inhabitants. Its Main street, running east and west, is intersected at right angles by the appellant railroad company's main and passing tracks and a spur track known in this record as the mill track. The passing track and the mill track join the main track at a switch, a short distance south of Main street. The mill track runs nearly parallel to the other two tracks north of Main street some distance past the McKinney Mill Company's flour mill, which is about ninety feet north of Main street and faces the railroad tracks. There is a platform across the entire front of the mill, which is at its northern end about eight feet and at its southern end about five feet from the nearest rail of the mill track.

About noon on November 25, 1918, the appellee, driving a horse and buggy, came from her home in the country to the mill for some flour. She came west on Main street across the main and passing tracks and drove north along the mill track to a point thereon opposite the front door of the mill. The buggy top was up and the curtains were down and while she was sitting in the buggy talking to the miller about the flour the defendant company's local freight crew backed a string of cars from the main track on the mill track and into the rear of plaintiff's buggy. Seeking to recover for injuries alleged to have been thus sustained she instituted this action and this is an appeal by the defendants from a verdict and judgment for $1,500 in her favor.

The grounds urged for a reversal are that the court erred (1) in refusing defendant's motion for a peremptory instruction, (2) in the instructions given, (3) in the admission of evidence, and (4) that the verdict is excessive.

1. It is contended that the verdict should have been directed for defendants (a) because plaintiff failed to prove such user of the track as made her a licensee, and (b) because she was guilty of contributory negligence as a matter of law.

(a) The rule is thoroughly established that the mere use of a railroad track by the public does not convert the users from trespassers into licensees, except when and where the use is habitual by such large numbers of people as to put upon the company the duty of anticipating their presence on the track. Adkins' Administrator v. Big Sandy & Cumberland Railroad Company, et al.,

147 Ky. 30, 143 S. W. 764; Chesapeake & Ohio Railway Co. v. Warnock's Admr., 150 Ky. 74, 150 S. W. 29; Corder's Admr. v. C., N. O. & T. P. R. Co., et al., 155 Ky. 536, 159 S. W. 1144; C. & O. R. R. Co. v. Dawson's Admr., 159 Ky. 296, 167 S. W. 125; C. & O. R. R. Co. v. Berry's Admr., 164 Ky. 280, 175 S. W. 340.

Plaintiff's proof does not show the number of persons using the track at the place of the accident and it is from this fact, counsel for defendants argue she had not proven herself a licensee under the above rule, and this is probably true; but that rule is not applicable to the facts of this case. Plaintiff was in no sense a licensee upon defendant's track, whose right to the protection of a lookout duty depended upon her conversion from a trespasser. Upon her evidence which was not contradicted by any witness for defendant she had as much right in her buggy at the place of the accident as did the defendants with their train. The uncontradicted evidence is that this mill track is laid longitudinally in an open passway (if not a public street of the town), that leads from Main street to the mill; that same is now and always has been the only means of reaching the mill; that it was so used before the railroad was constructed and has been habitually and constantly so used since by all members of the public having business at the mill; that the mill track and the passway are partly upon the property of the mill company and partly upon the property of the railroad company.

We held in Southern Ry. in Ky. v. Caplinger's Admr., 151 Ky. 748, 152 S. W. 947, 49 L. R. A. (N. S.) 660, that:

"Railway companies that have been privileged to lay tracks and run engines and trains in streets of cities and towns are obliged at all times of the day and night to anticipate the presence of travelers along the street and to take such precautions relating to speed, warning and lookout as may be reasonably sufficient to avoid injury to them."

This is because at such places the railroad company has not the exclusive right of way, but enjoys it jointly with the public. So upon the evidence here the defendant has not the exclusive right of way over the land upon which this mill track is located but only a joint right of use with the mill company and that section of the public having business at the mill. Hence, applying the very

same principles as were applied in the Caplinger case to the slightly different, but entirely analogous facts of this case, there can be no doubt that defendants in their use of this track owed to that section of the public having business with the mill of which plaintiff was a member at the time of the accident, a lookout duty during business hours at least, and the court did not err in refusing to direct a verdict upon the theory she was a trespasser.

(b) The question of contributory negligence is usually for the jury. It is only when the evidence leaves no room for differences of opinion among reasonable men that it becomes a matter of law for the court. This mill track touched the other tracks only at its northern end and was used merely as a housing or storage track. The extent of its use by the defendant is not shown, but being located and used as above indicated, it certainly is not such a track as we may assume was used constantly or frequently by the defendants. In fact a contrary presumption would seem to be more reasonable; and under all the circumstances proven in this case, we do not think it can be said that plaintiff was guilty of contributory negligence as a matter of law. But even if it might be conceded that she was thus negligent, she was nevertheless entitled to have her case go to the jury under the last clear chance doctrine, since there is much evidence, practically uncontradicted, that her peril could easily have been discovered and her injuries avoided had defendants maintained a lookout on the rear of the backing train as was their duty. Hence the court did not err in overruling the motion for a directed verdict.

2. The criticism of the first instruction given by the court is based upon the assumption that plaintiff's right of recovery was dependent upon her status as a licensee on the track as a result of the habitual use of same by large numbers of the public and has no pertinency under our view of her relationship to the defendants in the use of the track. The criticism of the instruction upon the measure of damages is more serious in that it allowed a recovery for any permanent impairment of her power to earn money when there was no evidence that her injuries are permanent. This was error of course and that it was prejudicial is probable, as will appear when we come to consider the complaint that the verdict is excessive.

3. Dr. Carpenter testifying for plaintiff was asked over the defendant's objection and exception "Has she received an injury to her nervous system?" and answered "She has, whether it will last or not I don't know; sometimes these shocks are very lasting; sometimes there is traumatic hysteria, which is one of the worst diseases a physician is called on to treat." Defendants asked to have this testimony excluded, which the court refused to do. The form of the question is objectionable and that part of the answer should have been excluded which refers to traumatic hysteria since there was no evidence that plaintiff had any such disease. This error, seemingly trivial and ordinarily harmless, would become prejudicial like the one just referred to above, if the size of the verdict might be attributed thereto, because not otherwise justified by the evidence.

4. The evidence is not at all satisfactory that the plaintiff was seriously or substantially injured. There is no evidence whatever that she has been permanently injured. She states that she was bumped around three or four times in the buggy while it was being demolished; that her head and back were hurt and still bothered her at the time of the trial. She walked to her home a distance of about three miles immediately after the accident and did not go to a doctor for some five or six days thereafter and but the one time. The doctor testifies that she saw no bruises of any kind; that the pupils of plaintiff's eyes were enlarged, that she was nervous and trembling and that she would probably be more easily shocked now than she would have been before the accident, but the effect of the doctor's testimony as to the extent of the injury is very much lessened by her practical admission upon cross-examination that the plaintiff was more frightened than hurt by the accident.

We are therefore of the opinion that the size of the verdict must be ascribed to passion and prejudice unless it may be accounted for by the errors above pointed out, both of which indicated a permanent injury not proven. In either event a reversal must be ordered.

Wherefore the judgment is reversed with directions to grant defendants a new trial and for proceedings consistent herewith.