## Coomer's Adm'r v. Kentucky Transport Corporation.

May 2, 1947.

John Sherman Cooper, Judge.

Bethurum & Neikirk for appellant.

Ben V. Smith & Son and Russell Jones for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

Clyde Coomer, a boy between seven and eight years of age, was run over and killed by a truck of the Kentucky Transport Corporation in Somerset, Kentucky, on May 14, 1945. Charles Coomer, father of Clyde

Coomer, qualified as administrator of his deceased son's estate, and brought this action against the Kentucky Transport Corporation to recover damages in the sum of $10,000, for the alleged wrongful death of his intestate. On the trial of the case the jury returned a verdict for the defendant, and the plaintiff appeals. It is argued that the verdict is flagrantly against the evidence, the court should have peremptorily instructed the jury to find for the plaintiff, and the instruction on contributory negligence is erroneous.

The accident happened at the intersection of an alley, or driveway, twenty feet wide, and Mt. Vernon Street, one of the main streets of Somerset. A building occupied by an A. & P. grocery store fronts on Mt. Vernon Street adjacent to the alley. On the day in question, the appellee, Kentucky Transport Corporation, transported two truck loads of groceries from Louisville, Kentucky, to Somerset for use by the A. & P. store. The trucks were driven down the alley on the west side of the store to an open space at the rear of the store where they were unloaded. The unloading was completed about noon, and the trucks started on the return trip to Louisville. They were large trucks, about forty feet in length, consisting of a tractor on six wheels and a trailer on four wheels. Clyde Coomer had attended school at the Somerset Central Grade School, and when school was dismissed at noon he and his sister, Katherine Coomer, who was nine years of age, started to the central part of town to obtain their lunch. Dickie Moore, who was seven years of age, and his sister, Mary Jo Moore, who was twelve years of age, were with the Coomer children. The four children walked west along the sidewalk on the north side of Mt. Vernon Street, and practically all of the evidence, both for appellant and appellee, is to the effect that the truck was standing with the tractor turned to the right in Mt. Vernon Street and the trailer across the sidewalk at the mouth of the alley when the children reached the intersection of the alley and Mt. Vernon Street. The evidence for both appellant and appellee is to the effect that the decedent and the Moore boy began playing "last tag" with the truck just as it started to pull out into the street from its stationery position across the sidewalk. Mary Jo Moore took hold of Clyde Coomer's

arm, and he jerked loose from her and fell under the left rear wheel of the truck. Katherine Coomer, who was introduced as a witness by the appellant, testified as follows on direct examination:

"Q. Tell these men just what happened? A. We were coming down the Street and Dickie Moore told Clyde to get the truck last tag. We were trying to get out of the way and Mary Jo got hold of him and let him go and he fell.

"Q. Did you have hold of him? A. No.

"Q. Mary Jo had a hold of him and let him go and he fell? A. Yes.

"Q. Did he fall under the truck? A. Yes.

"Q. Did you see this big truck? A. Yes.

"Q. Did you stop? A. Yes.

"Q Did your brother Clyde stop? A. Yes.

"Q. Did you get hold of Clyde? A. No, sir.

"Q. Who did have hold of him? A. Mary Jo.

"Q. What did she do? A. She let him fall."

On cross-examination she testified:

"Q. Where was the truck then? A. Right there on the road.

"Q. Was the front end out in the Street? A. Yes, sir.

"Q. Was your little brother trying to tag the back end? A. He started to.

"Q. Was that when the Moore girl got hold of him? A. Yes, sir.

"Q. To keep him from tagging it. A. Yes, sir.

"Q. What happened then? A. She let him fall.

"Q. Which way did he fall? A. Went toward the truck.

"Q. Did he fall under the truck? A. Yes, sir."

Mary Jo Moore testified as follows:

"Q. Tell these men in your own words what hap-

pened at the A & P Store? A. We were walking down the Street and we saw the truck come out so we stopped, and we walked down to the end of the sidewalk and the Coomer boy and my brother were jumping and playing and I took hold of them because I was afraid they would go in front of the truck as it came in front of us.

"Q. Did the truck pull across the street in front of you all? A. Yes, sir.

"Q. Where were you standing? A. Just a little ways from the Street on the sidewalk.

"Q. Where the driveway comes into Mt. Vernon Street? A. Yes, sir.

"Q. Tell what happened after that truck pulled across? A. The Coomer boy said he was going to jump a ride on the truck and I grabbed hold of him because I had heard of little boys getting killed and he pulled loose and fell.

"Q. Where did he fall? A. Under the wheel."

Several adult witnesses who saw the accident testified to the same effect.

Appellant stresses the testimony of Mrs. Ed Bates, but her testimony differs from that of the other witnesses in one respect only. She stated that the truck proceeded up the alley across the sidewalk into Mt. Vernon Street without stopping. She was walking east on the sidewalk along Mt. Vernon Street, and did not see Clyde Coomer fall under the left rear wheel of the truck, since the body of the truck was between her and the child.

We are unable to grasp appellant's argument that the verdict is not supported by the evidence. All of the witnesses agree, except in minor respects, as to how the accident happened, and their testimony fails to point to any negligence on the part of the driver of the truck. It is argued that his failure to sound the horn as he approached the intersection was negligence, but appellant's own witnesses stated that the decedent saw the truck across the sidewalk while he was in a place of safety. Under these circumstances, the duty to sound the horn did not arise. Thomas v. Dahl, 293 Ky. 808, 170 S. W. 2d 337.

Instruction No. 2 told the jury that it was the duty of Clyde Coomer, at the time and place referred to in the evidence, to exercise ordinary care as defined in the third instruction for his own safety. Appellant insists that the court erred in failing to incorporate in this instruction the standard of conduct applicable to a child of decedent's age, experience and discretion. In the third instruction the court defined ordinary care as follows: " 'Ordinary Care,' as applied to the decedent, Clyde Coomer, means that degree of care usually exercised by ordinarily careful and prudent boys of the age, intelligence and experience of the said decedent under circumstances like or similar to those of this case."

This answers appellant's criticism of instruction No. 2. Metts' Adm'r v. Louisville Gas & Electric Company, 222 Ky. 551, 1 S. W. 2d 985. It is unnecessary to discuss at length this alleged error in the instructions, since a majority of the court is of the opinion that appellee's motion for a directed verdict in its favor should have been sustained.

Judgment is affirmed.