LOUISVILLE & NASHVILLE RAILROAD
COMPANY, Appellant,

v.

Opal Burton BLEVINS, Appellee.

Court of Appeals of Kentucky.

May 18, 1956.

Rehearing Denied Sept. 21, 1956.

C. S. Landrum, C. E. Rice, Jr., Lexington, J. C. Baker, Harlan, Henry L. Bryant, Pineville, for appellant.

J. B. Johnson, Harlan, for appellee.

STANLEY, Commissioner.

The judgment is for $5,000 damages for personal injuries sustained by the appellee, Mrs. Opal Burton Blevins, when her automobile was struck by a locomotive of the L. & N. Railroad Company. The appellant's argument that the court erred in not directing a verdict in its favor rests upon the grounds (1) that the plaintiff was a trespasser or a bare licensee, and (2) that she was guilty of contributory negligence as a matter of law. Other grounds appear in the course of the opinion.

The accident happened in the City of Harlan where the railroad runs approximately east and west. A parallel street, 20 or 25 feet wide and about 500 feet long, connects the intersecting north and south streets of Main and Vine. This unnamed street borders the railroad right of way on the south. There is a berm or strip between the concrete street paving and nearest rail of a side track. It is not clearly shown, but apparently the ends of the cross ties are within the strip. This strip is elevated "a little" above the paving. There is no curb but only a beveled edging which one witness stated was about two inches high. On the south side of the street and facing the railroad are the loading platforms of mercantile houses which are served by what is called the "team track" or side track. The short street is used principally by the business houses, but it is a public way customarily and frequently used by the public both day and night for passing between Main and Vine Streets.

On the evening of March 9, 1953, after dark, several large trucks were parked at the platforms of the business houses and extended diagonally over most of the street paving. The plaintiff was driving west on this street, and in order to get around the trucks, drove close to or on the railroad right of way. She was quite positive the wheels of her car were never on the track but were upon the berm or strip between the paving and the track. A locomotive was being backed eastwardly on the side track without any light on the rear (that is, the tender) and without any signal or warning of its approach. The plaintiff testified the lights of her car were burning and she saw the locomotive when it had crossed Main Street and was perhaps 125 feet away. She instinctively stepped on her brakes and immediately turned her car to the left to get out of the way, but the tender struck near the right rear door of her automobile. She

was either thrown or jumped from the car and suffered severe injuries.

The main track is between the team track and the depot. The appellant maintains automatic flasher lights at the Main Street crossing where there is also a street light. The plaintiff testified she could not see a train approaching beyond the street light. There is some evidence that a train on the team track did not put the flasher lights in operation.

The railroad company introduced no evidence. It rested the case upon the proposition, which is, essentially, that the plaintiff was a trespasser to whom it owed no duty or precaution until her peril was actually discovered and that there was not and could not have been such discovery because the plaintiff had abruptly thrown the rear of her car too near the train, and that in using the street with knowledge of the conditions, she had assumed the risk of injury and could not hold the railroad company responsible for it.

The court submitted the case under an instruction which hypothecated the defendant's liability upon the jury's belief that its premises were habitually used by the public at or near the time and place of the accident, and the presence of persons or vehicles on the track or on the street adjacent to the right of way was reasonably to be expected. Under such conditions, the court instructed it was the duty of the railroad company's employees to give reasonable warning of the approach of the locomotive by sounding the whistle or the bell and to keep a reasonable lookout. Essentially, this regarded the plaintiff as a possible licensee. Continuing, the instruction stated if the jury believed from the evidence that any of these duties (specifically repeated) were not observed and as a proximate result the plaintiff was injured, they should find for her. However, incorporated in this instruction was a statement that the plaintiff could not recover damages unless she was exercising reasonable care to discover and keep out of the way of the engine and tender. Another instruction submitted the converse. Another provided that if the plaintiff had received warning of the locomotive's approach when at a safe distance from it, then she was not entitled to recover except under the last clear chance rule, which was expressly defined.

■ The instructions were patterned after those outlined in Southern Railway Co. in Kentucky v. Sanders, 145 Ky. 679, 141 S.W. 77, which are published as Sec. 657, Instructions to Juries, Stanley. The form of the given instruction is none too clear for it mixes up the duties of the respective parties and their breach. Greenway v. Watson, 268 Ky. 745, 105 S.W.2d 848; Coomer's Adm'r v. Kentucky Transport Co., 304 Ky. 650, 201 S.W.2d 901. While clarity in an instruction is desirable, the substance is of greater importance than is the form. Romans v. McGinnis, 156 Ky. 205, 160 S.W. 928; Louisville & N. R. Co. v. Slusher's Adm'r, 217 Ky. 738, 290 S.W. 677. These instructions correctly submitted the applicable law unless the appellant's contention with respect to the status of the appellee is sound.

■ It will be observed that the instructions referred to the plaintiff as being on the street or on the railroad right of way adjacent to the street. As shown by an instrument filed in the record, the railroad company in 1939 granted the City of Harlan an easement over the area for use as a street. The boundary was described as being five feet southwardly from the center line of the team track. The company argues, but without evidence, that this gave clearance for the train and that the plaintiff was upon the railroad right of way when she was hurt. It is common knowledge that the standard gauge of railroad tracks is 4 ft., 8½ in. Webster's International Dictionary. So, it is 2 ft., 4 in. to the outer rail, and in this case it was 2 ft., 8 in. from the rail to the street right of way. There is no testimony as to the width of the locomotive tender; but if it did not actually extend beyond the railroad right of way, it was certainly too close for the reasonable safety of an automobile or a person on the edge of the street. It is proved that for years automobiles frequently drove up-

on this berm and the end of the cross ties in getting around parked trucks. The metal was well packed down from much use.

Much has been written about the differences between trespassers, licensees and invitees. With respect to the right of protection from harm, a bare licensee is close to being a trespasser while a gratuitous licensee may be under some circumstances close to being an invitee.

The Restatement of the Law of Negligence draws a clear distinction between a licensee who is a business visitor and a licensee who is permitted by implication or toleration to use property of the possessor under the reasonable belief that he may do so if he desires or finds it necessary. The customary and habitual use by the public without manifested objection justifies such assent and such belief in the privilege, and this constitutes one a gratuitous licensee. Restatement of the Law of Torts, Negligence, Vol. 2, Secs. 330, 331. This court has recognized this classification of licensees by acquiescence in many cases arising where persons on railroad rights of way have been injured by the operation of trains. Cincinnati, N. O. & T. P. R. Co. v. Owsley, 191 Ky. 661, 231 S.W. 210; Louisville & N. R. Co. v. Snow's Adm'r, 235 Ky. 211, 30 S.W.2d 885; Louisville & N. R. Co. v. Bush's Adm'x, 285 Ky. 645, 148 S.W.2d 1050; Louisville & N. R. Co. v. Adams' Adm'x, 303 Ky. 131, 197 S.W.2d 93.

In general, the railroad company in such cases is subject to liability to a gratuitous licensee for injury to him caused by its failure to exercise reasonable care for his safety. This duty extends to anticipating his presence, exercising commensurate lookout and warning the licensee of some act that may cause him injury if he comes or remains within the area endangered by that act. Louisville & N. R. Co. v. Adams' Adm'x, 303 Ky. 131, 197 S.W.2d 93. There is, of course, the corresponding responsibility of the licensee to yield his privilege and to give precedence to the licensor's use of his property for his own purpose, if the licensee knows or should know of the licensor's activity and the risk to himself involved therein. Restatement, Sec. 341. The fact that he is a licensee does not, of course, relieve one from the duty to protect himself. Hensley v. Braden, 262 Ky. 672, 91 S.W.2d 34.

Concerning the present location, regard is had for the fact that it was in a city alongside a street and not in the open country or a sparsely settled community where there is usually little or no reason to suppose a person will be upon the railroad premises. It is not the fact, however, that the accident occurred in a city that controls the imposition of responsibility to a gratuitous licensee, but the fact that the place is thickly settled and the use of the particular part of the railroad right of way could reasonably be anticipated. Southern R. Co. in Kentucky v. Caplinger's Adm'r, 151 Ky. 749, 152 S.W. 947, 49 L.R.A.,N.S., 660; Chesapeake & O. Ry. Co. v. Bailey, 311 Ky. 725, 225 S.W.2d 299.

The railroad company owed the plaintiff, as a gratuitous licensee, the duty of anticipating her presence. To back a train under such condition and in such circumstances, without keeping any sort of lookout and without lights, signals or other warning of approach, was negligence. Louisville & N. R. Co. v. Bays' Adm'r, 142 Ky. 400, 134 S.W. 450, 34 L.R.A.,N.S., 678; Southern Ry. Co. in Kentucky v. Caplinger's Adm'r, 151 Ky. 749, 152 S.W. 947, 49 L.R.A.,N.S., 660.

We think the court properly submitted the case on the hypothesis that the plaintiff was a licensee.

We come to the question of whether or not the plaintiff was guilty of contributory negligence as a matter of law.

First, the evidence does not justify the argument that the plaintiff had jerked her car in such a way as to throw the back end in front of the locomotive.

The appellant argues the appellee assumed the risk of being struck by a train

when she drove upon its right of way. There is no doubt that a licensee on or near railroad tracks assumes such risks as are reasonably to be apprehended from the reasonable and proper use of the railroad by its owner.

 A distinction is to be drawn between the mere condition of premises, such as maintaining a turntable pit in which one falls, as in Louisville & N. R. Co. v. Hobbs, 155 Ky. 130, 159 S.W. 682, 47 L.R.A.,N.S., 1149, relied upon by the appellant, and active negligence which imperils the safety of the licensee where there is an affirmative duty of care or protective vigilance to avoid injury. One does not assume a risk resulting from another person's active negligence or breach of legal duty to him unless he sees or should see, the risk he is incurring, as in Poole v. Lutz & Schmidt, 273 Ky. 586, 117 S.W.2d 575 and Porter v. Cornett, 306 Ky. 25, 206 S.W.2d 83, and cases cited in them. Of course, always there may be contributory negligence in failing to exercise care for one's own safety in the particular circumstances. In a case like this, such duty on the part of the plaintiff certainly existed, but whether or not it was observed by this party was a question for the jury. We think the instruction properly submitted the question of plaintiff's negligence.

The instruction is criticized because it made it the duty of the defendant to exercise care in relation to persons on the street. Appellant submits that this was error because there was no legal duty upon the railroad company toward persons on the street. We think this in part begs the question as the instruction refers to the street *adjacent to the railroad tracks*. As shown above, the ends of the cross ties of the track at this point were at the very edge of the public street and, as shown by the evidence, were practically used as a part of the street.

The train endangered one at the edge of the street.

On this point, as well as upon the point of absence of duty toward the appellee, the appellant leans heavily upon Hensley v. Braden, 262 Ky. 672, 91 S.W.2d 34. In that case the highway skirted the railroad, and the paving extended to the end of the cross ties for a distance of 184 feet. A taxicab had been driving along the highway in the same direction a train was going. The cab stopped at the edge of the road, and a passenger opened the door and started to step out when the train struck the door and injured the man. As stated in the opinion, there was no duty upon the trainmen to maintain a lookout beyond the railroad right of way or to anticipate that a person traveling in a car in proximity thereto, without taking any precaution for his own safety, would leave the highway and suddenly appear upon the track or throw open the car door in front of the oncoming train. In those circumstances, we held the railroad company was entitled to a directed verdict. The absence of a duty of anticipation of one leaving a place of safety and in an "infinitesimal" lapse of time open a car door over the railroad track in the path of a train and get out of the car, and the obvious danger in doing so, distinguish the case from the one at bar where customary use of the edge of the railroad track by the public made the user a licensee, and the danger of the moment of a train backing without lights was not obvious to her.

 The court did not commit an error in declining to require the plaintiff to file copies of income tax returns. In answer to interrogatories for discovery, the plaintiff disclosed her earnings (as she did on the trial) and stated she had not filed income tax returns.

The judgment is affirmed.