BARKER v. ST. LOUIS SOUTHWESTERN
RY. CO. OF TEXAS.

(Court of Civil Appeals of Texas.    Texarkana.
Nov. 23, 1911.)

1. RAILROADS (§ 355*)—INVITEES—CARE RE-
QUIRED.

Where a person is at the stockyard of a
railroad company to deliver stock for shipment,
he is an invitee on the premises, and the com-
pany must use reasonable care to render the
premises reasonably safe for him.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. § 1226; Dec. Dig. § 355.*]

2. RAILROADS (§ 398*)—LICENSEES AND IN-
VITEES—EVIDENCE.

In an action for injuries received by a
shipper of stock while on his way from the de-
fendant company's stockyards and passing
along a path near its track, evidence *held* to
show that a relation of invitee had terminated
and that of licensee existed at the time of the
injury.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. §§ 1356–1363; Dec. Dig. § 398.*]

3. RAILROADS (§ 355*)—INVITEES.

Where a railroad company constructed a
stockyard and approaches thereto, so as to pro-
vide for shippers of stock a safe way to enter
and leave, it thereby discharged its duty to such
shippers, and cannot be said to have invited
them to approach the yard by other and less
convenient ways, so that the relation of invitee,
which it bears to a shipper taking advantage
of the accommodations offered, cannot be ex-
tended to such other approaches or paths which
may have been used.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. § 1226; Dec. Dig. § 355.*]

4. RAILROADS (§ 358*)—CONDITION—LIABIL-
ITY FOR INJURY TO LICENSEE.

Where a person on railway premises as a
mere licensee is injured by falling off a bridge,
and there is no showing that there was negli-
gence in the construction thereof, he must be
held to have accepted the premises as he found
them, and no liability will attach for his injury.

[Ed. Note.—For other cases, see Railroads,
Cent. Dig. § 1236; Dec. Dig. § 358.*]

Appeal from District Court, Bowie Coun-
ty; P. A. Turner, Judge.

Action by H. C. Barker against the St.
Louis Southwestern Railway Company of
Texas. From a judgment for defendant,
plaintiff appeals. Affirmed.

Appellant made a shipment of cattle from
a point in Arkansas to Mt. Vernon, Tex., via
Texarkana, and was accompanying the same.
These cattle were brought into Texarkana
about 12 o'clock at night on April 12, 1910,
and delivered by the initial carrier to ap-
pellee at its stock pens. It was necessary that
the cattle should be unloaded from the cars
into the stock pens in order that they might
be loaded the next morning in the cars of ap-
pellee and carried on to Mt. Vernon. And
cattle were delivered by day and night at
these stock pens. The stock pens were located
about one-half mile from the Union Depot.
The main line of appellee runs by the stock
pens, passing its yard office about 100 yards
distant, crossing Deutchman creek at what

is called Double bridge, about 300 yards
from the pens, thence in a northeasterly di-
rection across the transcontinental branch of
the Texas & Pacific Railway, and on to the
Union Depot.    Double bridge is about 80
feet long, and consists of concrete abutments
on either side of the creek from 8 to 10 feet
high, the sides of which are perpendicular,
and the center is supported by a concrete
abutment upon which are laid the sills of
the bridge. It is a flat structure, unguarded
on the sides. A dump was built approach-
ing the creek and bridge each way, and is
wide enough for two tracks. The Texas &
Pacific main line in running from the yard
office mentioned to the Union Depot paral-
lels appellee's road and also crosses this
bridge; hence a double bridge. It was shown
that the Texas & Pacific Railway Company
owned the right of way into the city of Tex-
arkana, and that the appellee's track was
placed on the dump by contract only. From
near the stock pens and by the track of ap-
pellee, thence running between the tracks of
appellee and the Texas & Pacific Railway
from the yard office mentioned, crossing the
bridge, thence to where the two tracks cross
the transcontinental line, thence to Oak
street, there is a well-beaten and traveled
pathway.    Oak street, it is shown, is 743
yards from the stockyard.    It was also
shown by evidence offered on the part of ap-
pellant that the pathway was a customary
route of travel by pedestrians both to and
from the stockyards and vicinity, which has
considerable population, to the main business
portion of the city.    Sometimes, it appears,
shippers of stock returned from the pens by
way of this path to Oak street.    The stock-
yard is constructed against a public street
on the west, which comes against the corner
of the yards, and the street leads to Lelia
street, half a block away, running into Phe-
nie avenue, and by regular public streets,
and for the most part sidewalks, by which
people could and did go to and from the
stock pens to the main business portion of the
city. An iron gate of the stockyards leads
from the stockyard to the street on its west.
This street is the only way vehicles can
reach the stockyards.

After unloading and caring for the cattle,
the appellant and his assistant, Dawson, de-
cided to return to the city proper to find
lodging for the balance of the night; there
being no such accommodations at the stock
pens or vicinity.    Proceeding from the stock
pen premises up the track of appellee to the
yard office, thence down the pathway men-
tioned between the two tracks, they reached
Double bridge, and appellant suddenly step-
ped into the open space between the two
bridges, or double bridge, and fell beneath
and was injured.    From the dirt approach
and between the two tracks across the dou-

ble bridge there is an open space across the creek. Appellant, according to his evidence, did not know the bridge was there, or of any opening, and could not see it because of the darkness. From the stock pens to the point of injury it is by accurate measurement 1,150 feet. Appellant by his petition claimed that he was invited to use the pathway as a walk at the time and in the manner he was using same, and that appellee was guilty of negligence proximately causing his injury.

Hart, Mahaffey & Thomas, for appellant. Glass, Estes, King & Burford, E. B. Perkins, and D. Upthegrove, for appellee.

LEVY, J. (after stating the facts as above). [1] The court peremptorily instructed a verdict in favor of appellee, and this ruling is presented as being error. Considering the evidence in its strongest feature, as against a peremptory instruction, it could be said that appellant was at the stockyard of appellee as a shipper of live stock, and to deliver the same for shipment. He was therefore, while at the stockyard, in the legal relation to appellee of an invitee on the premises, and there was imposed by law upon appellee the legal duty to use reasonable care and prudence to render the premises reasonably safe for him. But according to appellant's own testimony he had finished his business with appellee, and was afterwards injured by falling into an open space at the double bridge situated on the main line track about 300 yards distant from the stockyard. By actual measurement on the ground, it appears that the point of injury was 1,150 feet distant, and to that distance disconnected from the premises as actually occupied and used for stockyard purposes. It further conclusively appears that the stockyard premises were confined by fencing, and established and maintained by appellee against a public street for free and accessible approach thereto, and that appellee maintained and constructed no other approach or entrance thereto for shippers. The pathway across the railway tracks was made, it conclusively appears, and used by pedestrians for their own convenience, and appellee did not construct or maintain it as a necessary approach or entrance to the stockyard for shippers from the public streets. Therefore it must be said that it appears as an uncontroverted fact that the appellee had constructed and maintained the stockyard with plain and visible limits, and had constructed and maintained it against a public street of the city on the west, with entrance adjacent thereto, that shippers might and would enter and approach it direct from the used public streets, and constructed and maintained no other approach or entrance. And it further appears conclusively that appellant did not suffer injury through any condition at or about the stockyard premises, but was injured at a point remote and disconnected from the stockyard premises as actually maintained and used for stockyard purposes.

[2] So, admitting that it appears as a fact that appellant, because a stock shipper, was upon the stockyard premises in the first instance as an invitee, still it must be further said, we think, that it conclusively appears that such relation had terminated, and, in consequence, the legal duty imposed in such relation on appellee had ended, when appellant, upon finishing his business with appellee, had voluntarily passed out of and beyond the limits of the stockyard premises with safety, as was the case.

[3] The pathway in evidence, and on the route of which was the bridge where the injury occurred, not having been constructed, maintained, or provided by appellee as a necessary approach from the streets of the city to the stockyard for shippers, the appellant could predicate no claim to have his rights measured in the relation of invitee on the stockyard premises in respect thereto. His invitation to be upon the stockyard premises necessarily could not be extended, we think, to other parts of appellee's premises beyond the stockyard premises and approach thereto as constructed and maintained or provided by appellee for such purposes for shippers. When, as it conclusively appears, appellee so constructed its yard and maintained it as to provide a full, free and safe way to enter and leave the same on the adjacent public street on the west, as it did, and this was the only approach provided, it discharged its full duty to shippers and appellant. In consequence shippers could not be said to be invited by appellee to approach or leave the yard by any other way. If the pathway by the yard was not constructed or provided by the appellee for shippers as an approach to the yard from the streets of the city, and it not being made necessary to so use the same, as here, then the use of such pathway by appellant to reach the main business portion of the city would not rest in invitation to use it as an approach or appurtenant of the yard, but the right to its use by him would be referable to mere license heretofore granted pedestrians to use that particular portion of its premises along the route of the pathway. Therefore when appellant left the limits of the stockyard and voluntarily chose, as he did, to go to the pathway made by pedestrians along the main-line track, instead of going from the yard to the adjacent public street, he was upon such pathway on the premises by license merely, and his rights would be measured in that relation.

[4] The evidence shows that the bridge at the point of injury is a permanent structure, and the evidence does not show or tend to show any negligence in the construction or maintenance of the same as such. In such case, as a licensee on the premises at the

point of injury. appellant must be held to have accepted the premises as he found them, and appellee would not be liable. Railway Co. v. Montgomery, 31 Tex. Civ. App. 491, 72 S. W. 617; Railway Co. v. Spivey, 97 Tex. 143, 76 S. W. 748; Railway Co. v. Sgalinski, 19 Tex. Civ. App. 107, 46 S. W. 113.

The judgment was ordered affirmed.