## Cincinnati, New Orleans & Texas Pacific Railway Company v. Hughes.

(Decided February 6, 1917.)

### Appeal from McCreary Circuit Court.

1. Railroads—Failure to Look and Listen.—A person injured while attempting to cross a railroad track upon a public highway or street will not be charged with contributory negligence as a matter of law for failing to look and listen for the approach of a train under circumstances which are calculated to distract his attention and whose tendencies are to prevent him from exercising his faculties to discover the approach of a train.

2. Railroads—Signals—Questions for Jury.—Where there is conflict in testimony as to whether those in charge of a train gave the proper signals for its approach to a crossing, the issue should be submitted to the jury, although the evidence might preponderate that such signals were given.

3. Railroads—Speed of Train—Evidence.—It was not improper to submit to the jury the question of the dangerous speed of the train when it is shown that the accident happened in a town of about 200 inhabitants, and at the principal crossing in it, over which, according to the proof, from 75 to 150 people passed each day, as this would be such a place as to require the agents of the company in the operation of its trains to anticipate the presence of persons upon the crossing, and to exercise corresponding care as fixed by law to prevent injuring them.

4. Appeal and Error—When Verdict Not Excessive.—Where the proof shows that the plaintiff was bruised upon many parts of his body, his face lacerated, his nose injured so as to interfere with his breathing, followed by a slight impairment of his eyesight, a verdict in his favor for $1,500.00 will not be disturbed as being excessive.

EDWARD COLSTON, JOHN GALVIN and TYE, SILER & GAT-LIFF for appellant.

JOHN W. RAWLING, ROBERT HARDING and JOHN W. SAMP-SON for appellee.

Opinion of the Court by Judge Thomas—Affirming.

The appellee, to whom we shall refer as plaintiff, was injured on June 4, 1914, while attempting to cross the appellant's (defendant's) track in the town of Greenwood, in McCreary county, which is a village, according to the proof, of something near two hundred inhabitants.

The road which plaintiff was traveling is a public road, and according to the proof is the only crossing in the town, except one, and is the most extensively traveled of the two. The defendant's road at that place has a double track and runs north and south. Trains going south travel the west main track, while those going north travel the east main track. There are two switches, one east of the two main tracks, and the other west; the east switch being also called the passing track, and the west one the house track, which is in reality a spur, it not connecting with the main track at its north end. Upon the west side track, or spur, the plaintiff was loading a car with logs, and on the occasion of his injury he was endeavoring to cross from the west side of the main track to the east side for the purpose of getting a rope which was necessary to be used in loading the logs. When he got to the west main track a freight train was traveling south across the public road, or street, and immediately after the caboose of that train passed over the crossing the plaintiff started towards the east or north-bound main track, which is situated about nine feet from the south-bound track, and as he arrived somewhere about the west end of the ties of the north-bound track his attention was directed by someone hallooing to him. However, according to his testimony, he did not know to whom they were hallooing. The persons making the noise were on a car

that was standing on the spur track, and when plaintiff heard the noise he stopped his movements for an instant and looked over his left shoulder in the direction of the noise when he was immediately struck by the steam chest or cylinder of an engine pulling a freight train going north on the east track. The impact knocked him diagonally across the street, and he fell against the east rail of the south-bound track at the north edge of the roadway. He sustained several bruises, as well as lacerations upon his face, and, as he claims, a fracture of one side of his nose, resulting in his breathing through that nostril being considerably impaired. He claims to have been otherwise wrenched and bruised, from all of which he suffered severe pain and from which he did not recover for some six weeks or more, and has not yet entirely recovered from some of the injuries, especially that impairing his full power of breathing. He was carried to a hospital that same day, which is located at Somerset, Kentucky, where he remained some eight days, and then returned home, where he was confined for several weeks. On the train to the hospital he claims to have expectorated blood, which fact is not denied by those who were with him.

Plaintiff filed this suit to recover damages for his injuries and charged that the defendant was negligent in operating its north-bound train, which struck him, at a high and dangerous rate of speed, and that his injuries were "caused by the gross negligence and carelessness of the defendant company and its servants in charge of said train," and that defendant "carelessly and negligently, and of its gross carelessness and negligence failed and neglected to sound the whistle or bell, or either of them, on said train, as they approached said crossing, and failed and neglected to make or give any signal whatever of the approach of said train." The conditions with reference to the crossing being located in the town, and with reference to the number of people daily using it are also set out in the petition.

The answer is a general denial and a plea of contributory negligence in a second paragraph. Upon trial, the plaintiff was awarded the sum of $1,500.00, for which judgment was rendered, and to reverse that judgment the defendant prosecutes this appeal.

There are numbers of errors complained of in the motion and grounds for a new trial, but the argument

made before us by defendant's counsel insists upon only one of them, which is the failure of the court to peremptorily instruct the jury to find for the defendant, which instruction was offered by it both at the close of plaintiff's testimony and at the close of all the testimony. This insistence is made upon two grounds: (1) That the testimony shows conclusively that the plaintiff was guilty of contributory negligence as a matter of law; and, (2) that it shows with equal conclusiveness that the defendant was not guilty of any negligence in approaching the crossing with its train.

Considering these in the order named, the testimony for plaintiff shows that he did not, as he attempted to cross the track, look to the south, from whence the train was coming, to see whether it was approaching. His testimony is that he was looking ahead of him, having his mind bent on the one purpose of procuring the rope needed in loading his logs on the car; that he was in a considerable hurry and walking somewhat rapidly, having been detained by the south-bound train as it passed over the west track, and that as he got near to the west rail of the east track his attention was attracted by the noise of those on the car located on the spur track who had seen the train approaching from the south and were endeavoring to stop plaintiff before he got upon the track. The probabilities are that the efforts of these people to arrest his attention diverted for the moment his mind and thought from his surroundings, whereby he failed to discover the approaching train. He says that he heard no whistle or signal of any character, and he is confident that no bell was ringing as the train approached the crossing. He testifies to facts which show that he was listening, but it is insisted that because he did not look to see whether a train was approaching that he was thereby guilty of such negligence as precludes him from the right to recover.

There are some instances, as shown by cases from this court, where one under the peculiar facts of those cases approaches a crossing deliberately and with apparent indifference and nothing appears to show that his faculties for discovering an approaching train are in anywise arrested, an injury under such circumstances will be attributable to his negligence as a matter of law, and to this class belong the cases of Conway v. L. & N. R. R. Co., 135 Ky. 229; L. & N. R. R. Co. v. Malloy's

Admrx., 28 Ky. Law Rep. 1113; C., N. O. & T. P. Ry. Co. v. Yocum's Admr., 137 Ky. 117; L. & N. R. R. Co. v. Gilmore's Admr., 131 Ky. 132, and cases therein referred to. In none of them are the facts surrounding the injured party as he approached the crossing, similar to those surrounding the plaintiff in this case. On the contrary, it has been many times decided that the mere fact that, under similar conditions to those we have here, the plaintiff in attempting to use a public crossing did not stop, look or listen would not be sufficient to charge him as a matter of law with contributory negligence. It is so held in the case of L. & N. R. R. Co. v. McNary, 128 Ky. 408. In that case the deceased, Mary McNary, was traveling on a street or highway, as was plaintiff in this case, and the only eyewitness to the accident testified that "When she came upon the track she had on a bonnet and did not look up or down the track, but was looking down to the ground. If she had looked up the track when or before she stepped upon the track she could have seen the approaching train for a long distance." This court, in holding that her conduct in approaching the railroad track did not constitute negligence *per se*, said:

"To hold as a matter of law that the footman is guilty of contributory negligence barring a recovery for his injury whenever he goes upon a railroad track without stopping, looking, or listening would be practically to exempt railroads from all responsibility in cases of this sort; for there are few cases indeed where the footman, if he stopped, looked or listened could not save himself by stepping to one side and waiting for the train to pass. But the fact is that a person thinking of his own business is sometimes unmindful of where he is, and will get on the railroad track before he is aware of it, or he will from other causes be endangered from passing trains."

This case has been approvingly referred to in a great many succeeding ones. Among them are I. C. R. R. Co. v. Sullenger, 160 Ky. 457; C. & O. R. R. Co. v. Warnock's Admr., 150 Ky. 79; C., N. O. & T. P. Ry. Co. v. Winningham's Admr., 156 Ky. 434, and many others which are not necessary to here cite.

In the Winningham case, in denying the rule as insisted upon by counsel for appellant, we said:

"But it is insisted that the evidence shows that decedent looked straight in front of him while approaching the track and made no effort to discover the approach of the train. It is, therefore, argued that he was guilty of contributory negligence as a matter of law. We have never adopted the stop, look and listen doctrine in this state. The doctrine of Smith's Admr. v. C., N. O. & T. P. Ry. Co., 146 Ky. 568, is not applicable. There the decedent was totally deaf. The only way he could discover the approach of the train was by the use of his eyes. Not having done this, it was held that he was guilty of contributory negligence. Here the decedent was in possession of all of his senses. It being the duty of the railroad company to give warning of the approach of the train, he had a right to act on the assumption that a warning would be given. Having the use of his hearing, the fact that he did not look is not conclusive of the question of contributory negligence. Ordinarily this is a question for the jury, and we see nothing in the facts of this case to take it out of the general rule."

The latest case from this court denying the contention is Kentucky Traction & Terminal Co. v. Jenkins, 171 Ky. 539. These cases proceed upon the theory that the person about to use the crossing has a right to rely upon the railroad company complying with the requirements of the law in the use of its track at that place by giving the required signals of the approach of the train, and if the conditions are such as to require it, that it will have its train under reasonable control and will maintain the proper lookout for the approach of persons upon its track. In other words, the duty of the traveler upon the highway and that of the railroad company at such places are reciprocal. Neither can entirely excuse himself of the exercise of care because the other fails in that particular, and if the traveler is exercising ordinary care under the particular circumstances he will not be charged with negligence as a matter of law, although he failed to exercise some one or more of his faculties to discover the approach of the train.

In this case the attention of plaintiff was attracted in an opposite direction from whence the train was coming by those hallooing to him, and he was more or less interested in procuring the rope needed in the loading of his logs, so we are unprepared to say, in view of the

authorities, *supra,* that his failure to look for the approaching train constitutes such negligence as bars his right to recover.

Considering now the second ground urged for the peremptory instruction, the testimony shows, as stated, that the village had about 200 inhabitants; that anywhere from 75 to 100 or more people crossed the defendant's track at the crossing in question each day. In addition to the testimony of the plaintiff as to the absence of signals of the approach of the train, it is shown by some three or four witnesses, located at places near the crossing where they could both see and hear, that the train failed to give any signal for the crossing either by whistle or ringing the bell, or at any rate, that they neither heard nor saw any such signal.

It is shown by the testimony of the fireman, who was located on the side of the engine where he could see the plaintiff as he approached the crossing, that the train which produced the collision was running about fifteen miles per hour, and that the engine was some five or six car-lengths south of the crossing at that time; that the cars were something near forty feet in length, making the engine between 200 and 240 feet away from the crossing at the time he discovered the presence of plaintiff. This witness states that he immediately notified the engineer, who was on the opposite side of the engine, and who could not see the plaintiff, but it is shown by the latter that nothing was done until the engine reached the crossing, when the air was applied and efforts made to stop the train. This, however, was manifestly too late, as the collision either had then, or immediately thereafter, occurred. It is not pretended by any of those in charge of the train that any alarm whistle was sounded after the discovery of plaintiff's peril. The operatives of the train, three in number, testified that the usual signals were given; that the bell was being rung at the time it approached the crossing; that in addition to these, a signal consisting of about three short blasts of the whistle was given, as that train passed the one going south on the west track. Defendant's witnesses stated that the train which struck plaintiff ran about the length of twelve cars before it stopped, while plaintiff's witnesses fixed the distance before it stopped at about twice that length. The train had in it forty-one cars, and had been coming down-grade for

a distance of one mile with the steam shut off, according to the engineer and fireman. There was testimony on behalf of the plaintiff to the effect that the train was running about thirty or thirty-five miles per hour. With this *resume* of the testimony, we cannot say that there was no evidence of defendant's negligence. If it failed to give the proper signal for the crossing, as plaintiff and his witnesses testify, although not so convincing as the testimony for the defendant, the issue was properly submitted to the jury. Moreover, it was for the jury to say whether, under the testimony of the fireman, the defendant exercised the proper degree of care after it discovered plaintiff's peril. We think upon these two issues there was sufficient evidence of defendant's negligence to call for a submission of the case to the jury.

We do not feel called upon to here enumerate the great number of cases from this court showing when and under what circmustances the use of defendant's track imposes upon it and its agents and servants in the operation of its trains the duty to anticipate the presence of persons on its track, and to exercise corresponding care to protect them. It is sufficient to say that under the facts of this case we are of the opinion that the rule stated is applicable. The question of defendant's negligence in the particulars mentioned, and that of plaintiff's contributory negligence, were each submitted to the jury by appropriate instructions, and of which no complaint is made by defendant's counsel, and we are not prepared to say that the verdict of the jury on these issues is so flagrantly against the evidence as to authorize us to disturb the verdict for that reason alone.

In the motion for a new trial complaint was made as to the size of the verdict, and this objection is casually but briefly mentioned in the brief of counsel. We are cited to no authorities, however, upon this point, and the mentioning of it in the brief would seem to be for the purpose of keeping up the noise first started in the motion for a new trial. There is no serious insistence upon it, and in the light of the testimony as to the extent of plaintiff's injuries, we are not prepared to disturb the verdict on this account.

Wherefore, the judgment is affirmed.