## Bales v. Louisville & Nashville Railroad Company.

(Decided February 8, 1918.)

### Appeal from Daviess Circuit Court.

1. Railroads—Licensees.—Where the public generally uses a pathway upon the right of way of a railroad company, with the knowledge and acquiescence of the company, persons become licensees, when thereon, and the railroad company is liable to them in damages for any injury arising from the negligent operation of its trains, as by a failure to maintain a lookout, to give timely warning of the approach of the train, or to approach without having the train under reasonable control.

2. Railroads—Licensees—Notice—The general rule is, that a licensee must take the premises of the licensor as he finds them, and a railroad company is not liable in damages to a licensee for injuries sustained by him on account of the defective or unsafe condition of a pathway, upon the railroad right of way, which he is traveling as a licensee, except where a pit or excavation or such like is put into the way and left unguarded, and its placing has been so recent, that the persons using the way are necessarily without notice of it.

3. Carriers—Passengers—Relation.—Before the relation of carrier and passenger is established, there must be an offer to become a passenger, either expressly or by such acts, as from which an offer may be implied, and an acceptance of the offer by the carrier,

either expressly, or there must exist such facts, as from which an acceptance may be implied.

4. Carriers—Passengers—Relation.—After the relation of passenger is once established, the obligation of the carrier arises more from grounds of public policy, than from the contractual relations.

5. Railroads—Passengers—Stations.—When a railroad company establishes a station for the reception and discharge of passengers from its trains, it is an implied invitation to persons to approach the station for the purpose of becoming passengers.

6. Railroads—Passengers.—To one, who has business with a railroad company, as a person desiring to become a passenger, he comes upon the premises of the railroad company, by implied invitation, and the company owes to him the same duty as any person, who is conducting a business and invites another to come and do business with him, and that duty is to use reasonable care to make the premises safe for him.

7. Railroads—Passengers.—To one, who approaches a railroad depot to become a passenger upon a train, which leaves the station, within a reasonable time after his arrival, the railroad company owes to him the same duties, which it owes to one with whom the status of passenger is already established, and that is, to use reasonable care to maintain its platforms, depot and the approaches thereto, the ways customarily used by passengers in going to and from the depot to the trains, and such portions of the depot premises as are customarily or necessarily used by the passengers, in a reasonably safe condition for their use.

8. Railroads—Passengers—Depot or Station—Approach.—If a railroad company establishes or sets apart a way, for passengers or other persons having business with it, to approach its depot, it must take ordinary care to make it reasonably safe for their use, whether the established way is a route upon the depot premises or elsewhere upon its property.

9. Railroads—Use of Pathway Upon Right of Way—Licensees.—A railroad company is not required to maintain in a safe condition for travel a pathway between the tracks or beside the tracks, upon its right of way, which is set apart and used exclusively for the operation of its trains, and which is not a part of the depot premises, which has been set apart for the use of persons having business with it, in coming to and about its premises, although persons having business with it may, with others, who have no business with it, sometimes approach the depot over the pathway, although its use by the general public has been sufficient to make a person thereon a licensee, and the fact that the travel upon it has been with the knowledge and acquiescence of the railroad company will not justify an implication of an invitation from it to approach its depot over the pathway.

10. Railroads—Use of Pathway Upon Right of Way—Acquiescence.— Where the public generally has used a pathway along a railroad right of way until one thereon is a licensee, he does not acquire any right to its use in the way of a prescription, and the railroad company may revoke the license and close the way when it

chooses, it having only acquiesced in the use of the way by the public, it can only be construed to be, that it acquiesced in its use in the condition in which it was.

FLOYD J. LASWELL and MALIN & MILLER for appellant.

W. P. SANDIDGE, BROWDER & BROWDER and BENJAMIN D WARFIELD for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The village of Utica contains from three hundred to four hundred inhabitants. One branch of the Louisville & Nashville Railroad passes through the village, in a direction from north to south. The railroad company, at this place, maintains a building for a depot and ticket office. The lot upon which the depot building is situated is rectangular, in shape, and the depot building is situated near the southeastern corner of the lot. The right of way, upon which the railroad is located, passes immediately in front of the depot building and along the east side of the depot lot to the northern boundary line of the lot. A public highway, which runs from the east to the west, is the northern boundary line of the lot, and, at this point, the railroad track crosses the public highway. Another public highway, which intersects the one above mentioned, at the northwest corner, of the lot, extends toward the south the entire length of the lot and forms its eastern boundary line. The southern boundary line of the lot is parallel with its northern boundary, and is a short space to the south of the depot building. The lot to the north and west of the building is vacant and unoccupied, except at certain intervals of time, piles of railroad ties are placed upon it. A wagon and carriage road leads across the lot from its west side to the depot building, and probably certain footpaths cross the lot from that side to the depot. The land of the entire vicinity, including the land upon which the village is situated, is low and flat and at wet seasons given to rain, and the northern end of the lot, upon which the depot is located, becomes wet and muddy, but what extent of the lot is thus affected does not, from the evidence in the transcript, appear. The chief business places, as well as residences, in the village, are in a direction north east of the depot and continue along the highways to the north and to the west and southwest of the depot. A ditch several feet in depth crosses the

highway at the northeast corner of the lot and extends in a south direction from that point alongside the railroad right of way, on the west side of the lot to the depot, at a distance of about nine feet from the ends of the railroad ties, and a similar ditch is situated upon the eastern edge of the right of way, from the highway, at the north, to and beyond the depot. Two tracks pass the depot from the south, one immediately against the platform, in front of the depot, and the other to the east of that track, but they come together at about two-thirds of the distance from the depot to the public highway at the north side of the lot. Between the tracks and in front of the depot is a concrete platform, probably three times the length of the platform attached to the depot building. It is six hundred feet from the depot to the highway at the northern end of the lot. A footpath commences at the highway, and extends from there upon the right of way between the ends of the cross-ties and the ditch upon the western side of the right of way, to the depot, and a similar footpath, though not so plainly marked, extends from the highway on the west side of the right of way, between the ends of the cross-ties and the ditch upon that side, to the depot, or in that direction. About two-thirds of the way to the public road and to the north of the depot is a switch target, which is attached to one of the crossties upon the west side and extends toward the ditch on that side two or three feet further, than the ends of the crossties, and has been so situated for forty or fifty years. Upon the same side of the tracks and according to the estimates of the different witnesses, from one hundred and fifty to two hundred and twenty-five feet to the north of the depot, a device, called a derail, is attached to the end of one of the crossties and extends about two feet further toward the ditch, upon that side, than the ends of other crossties. The latter device is about two feet in height, and had been situated at that point for about five years before the injury complained of. It is a contrivance of necessary use, in the operation of the railroad, and for the purpose as indicated by its name. The situation of the target and derail caused the path at their locations to be deflected to the west, so as to pass between them and the ditch, but a space of about seven feet remained unoccupied, except by the path, between the derail and the ditch. On the evening of March

15th, 1916, the appellant, George W. Bales, was in the village of Utica and desired to go from there to the city of Owensboro, and after dark, he was proceeding along the path from the highway to the depot, when he came in contact with the derail, in such a way, as to cause him to fall upon it and injure one of his legs. He instituted this action in an endeavor to recover damages from the railroad company because of his injury. The grounds he asserted for his cause of action were, that he was approaching the depot for the purpose of securing a ticket and becoming a passenger of the railroad to Owensboro; that the path had been used for a great many years, with the knowledge and acquiescence of the railroad company, as an approach to the depot, by persons intending to become passengers upon the railroad, and by persons alighting from the railroad at its depot and going to their homes, and that its use for that purpose was general, and that those circumstances amounted to an invitation upon the part of the railroad company, to him, to so use the path, and while so doing and being unable to see the derail by reason of the darkness, he was injured, as above described; that his injury was caused by the negligence of the railroad company in failing to keep and maintain the path in a reasonably safe condition for use by him, which was the duty which the railroad company owed to him: that the path was unsafe and dangerous by reason of the derail being a dangerous obstruction in it, and that the railroad company had negligently failed to cause it to be guarded or lighted at night; and that in wet, muddy weather the path was the only practical route from the buildings, at the northeast to the depot. The averments of the petition were denied by an answer, which, also, contained a plea of contributory negligence. The trial resulted in a peremptory instruction to the jury to find for the appellee, and a verdict having been returned in accordance therewith by the jury, a judgment was rendered accordingly and the appellant denied a recovery. For a reversal of this judgment the plaintiff has prosecuted this appeal.

(a.) There is a considerable discussion, in the briefs, as to the relations, which the appellant bore to the railroad company, at the time of his injury. The appellant insists that he occupied the status of a passenger, and that the railroad company owed him the same care

for his protection from injury, as it owes to a passenger, while the appellee, railroad ·company, insists, that he was, at the time of his injury, a mere licensee, to whom it owed no duty, except to use ordinary care to prevent injury to him by any affirmative or positive `act of negligence upon its part. The determination of the status occupied by the appellant, at the time of his injury, depends the result of the case. That he was not a ·trespasser, there is no doubt. At the time of his injury he was traveling upon a path, which, the proof undisputably shows, had been in regular use by such a number of persons, for such a length of time, in going to and from the depot and to and from the northeastern and southwestern and southern portions of the town upon business, pleasure and other occasions, and with the knowledge of the servants of appellee, that the law will imply that it acquiesced in such use of its right of way, and it was required to anticipate the presence of persons upon the path and to use ordinary care to prevent injury to them in the operation of its trains, by maintaining a lookout, having the trains under reasonable control and giving timely warning of their approach. I. C. R. R. Co. v. Murphy, 123 Ky. 787; L. & N. R. R. Co. v. Veach, 129 Ky. 775; Shelby v. C., N. O. & T. P. Ry. Co., 89 Ky. 402; L. & N. R. R. Co. v. McNary, 128 Ky. 408; Southern Ry. Co. v. Sanders, 145 Ky. 679; C., N. O. & T. P. Ry. Co. v. Hughes, 173 Ky. 693, and many others.

(b.)    That appellant was not a passenger, there can be no doubt. According to his own statement, he was merely intending to become a passenger after he should arrive at the depot. As a general rule, to become a passenger upon a common carrier, there must first exist a contract for that purpose between the individual and the carrier or else such circumstances must exist from which the law will imply a contract, although when one has once become a passenger and the relation is established, the requirements, of the carrier, do not altogether arise from any contractual relations, but arise by implication of law from grounds of public policy, but, before the relation can be established, there must be an offer to become a passenger, either expressly, or facts must exist from which the offer can be implied, and there must be an acceptance of the offer, either expressly or by implication from the facts and circumstances. 4 R. C. L.

1003, 1030; I. C. R. R. Co. v. Laloge, 113 Ky. 900; Southern Ry. Co. v. Lee, 30 R. 1360; C., N. O. & T. P. Ry. Co. v. Raine, 130 Ky. 454. One going toward a station to make preparations to take a train is not a passenger. In the instant case, appellant had not arrived at the station, nor had he made known his purpose or desire to become a passenger to the railroad authorities, nor had they accepted of his offer by any fact or circumstance.

(c.) If, however, the pathway, which the appellant was traveling, at the time, he received his injury, was not in a reasonably safe condition for his use, and was a way, which had been established and set apart by the railroad company for the use of passengers and persons having business with it, and he was using ordinary care for his own safety, at the time, and the railroad company had negligently allowed the path to become unsafe and his injury resulted from such negligence, his status is, as favorable to him, as if the relation of passenger had already been established between him and the company. He was intending to take a train for Owensboro, which would leave the depot at Utica within half an hour. His purpose was lawful and the business legitimate and of advantage to both him and the railroad company. A railroad company is obligated to use reasonable care to maintain its depot, platforms and such portions of the depot premises as are necessarily or customarily used by the passengers, and the approaches to them, in a reasonably safe condition for their use, and is liable to them in damages for any injury resulting to them, from a failure to perform its duty. L. & N. R. R. Co. v. Turner, 137 Ky. 730; L. & N. R. R. Co. v. Keller, 20 R. 957; L. & N. R. R. Co. v. Ricketts, 18 R. 687; L. & N. R. R. Co. v. Smith, 9 R. 404; L. & N. R. R. Co. v. Hobbs, 155 Ky. 130. The railroad company, having established the station at that place for the reception and discharge of passengers from its trains, thereby extended an invitation to persons to approach its depot for the purpose of becoming passengers. It owes the same duty to one, who approaches an established depot to become a passenger, within a reasonable time after arrival, with regard to using care to maintain the depot, platforms and approaches thereto, and such portions of the depot premises as are necessarily or customarily used by the passengers in a reasonably safe condition for use, as it owes to him, with whom the relation of

passenger has already been established. Such person is invited by the railroad company to come upon its premises, to do business with it for their mutual advantage. To one who has business with a railroad company and comes upon the premises by implied invitation, the railroad is under the same duty to him, as any person, who is conducting a business and invites others to come and do business with him, and that duty is to use reasonable care to make the premises safe for the use of such persons. Shelby's Admr. v. C., N. O. & T. P. Ry Co., 85 Ky. 204; Southern Railway Co. v. Goddard, 121 Ky. 567; L. & N. R. R. Co. v. Schneider, 174 Ky. 727. It is, however, perfectly evident, that a railroad company would not owe any greater duty to a person, who is intending to become a passenger than it would owe to one with whom the relation has already been established. As stated above, if the pathway was not reasonably safe through negligence of the railroad company, and it was a way, which had been established and set apart by it for the use of passengers and persons having business with it, to approach its depot, it owed the duty of using reasonable care to maintain it in a safe condition for their use, whether it was located upon the depot premises or elsewhere upon its property, but, it is conceded, that the pathway was not established nor set apart, by the railroad company, for the use of passengers, and other persons having business with it, to approach its depot, and was not upon the depot premises, but upon the railroad company's right of way, which had been set apart and used by it exclusively for the operation of its trains, and that it had extended an invitation to no one to use it as an approach to the depot. It would seem very clear then, that one merely going to the station intending to become a passenger, when he should arrive there, and who had not yet arrived upon the depot premises, as well as one who had been a passenger and had departed from the depot premises and was traveling over the pathway to his home, would be a mere licensee, to whom the railroad company would owe no duty, except not to injure him by any positive act of negligence, in the operation of its trains over its right of way. L. & N. R. R. Co. v. Hobbs, 150 Ky. 130. It is conceded that the pathway had been used by a sufficient number of persons and for a sufficient length of time, in traveling to and from the va-

rious places in the village, by a portion of its inhabitants, upon their own business and pleasure, as well as in traveling to and from the depot, to make a licensee out of one, who chose to travel thereon, and the railroad company would owe to him the duty which it owes to a licensee. It is, however, a well settled principle, that when a licensee enters upon the grounds of another he must take them as he finds them and at his own peril, and the owner is only liable to the licensee for injuries resulting from wilful acts. Johnson v. Paducah Laundry Co., 127 Ky. 369; Indian Refining Co. v. Moberly, 134 Ky. 822; Southern Ry. Co. v. Sanders, 145 Ky. 679; L. & N. R. R. Co. v. Hobbs, *supra*. In the last named case and in that of C., N. O. & T. P. R. Co. v. Hughes, 173 Ky. 639, it was held that a licensee could not recover damages against a railroad company for any injury caused to him because of any defect or unsafe condition of a pathway upon the right of way of the railroad. It is, however, contended for appellant, that the path upon which he was traveling, when injured, was an approach to the railroad company's station, which was customarily used by passengers and persons having business with the railroad company, in going to and from the depot, with the knowledge and acquiescence of the company, and had been so used for many years, and these facts gave it the same dignity, as if it had been established by the company, as a means of approach and departure from the station, by passengers and other persons having business with the railroad company, and hence an implied invitation had been extended to him to use it, and it was therefore the duty of the railroad company to use reasonable care to keep it in a reasonably safe condition for use, which it had negligently failed to do by failing to guard or place a light at the derailing device. The evidence shows that the pathway had been there for twenty years or more and that it and the railroad track, itself, and the path upon the eastern side of the track, had been used by persons, at will, in going to and from the depot, and going to any other places, they desired, on their own business and pleasure. It afforded a more convenient walking way for some of the people of the village, than to go around the roads or across the depot premises, for persons having occasion to go that way, and was in continuous use by those, who had no business with the railroad company,

as well as those who did. It may be conceded that a
railroad company must take care to maintain, in a rea-
sonably safe condition for use, such approaches to its
depot buildings as are upon the depot premises, as the
steps, stairways, the platforms and buildings, the ways
of going to and from the trains to the depot and the
ways customarily .used by passengers upon the depot
premises in going to and coming from the station and
such like, and the way to such portions of the depot
premises as passengers necessarily or customarily use,
because the depot premises and the ways thereon have
been set apart and established for the use of passengers
and other persons having business with the company,
but a way, which has not been set apart or established
for the use of persons having business with the com-
pany, and which is not upon nor a part of the depot
premises, and which, in its inception, was created by
mere trespassing without authority or invitation, is not
such an approach, as is contemplated, when it is said,
that the railroad company must maintain the approaches
to its depot in a reasonably safe condition for the use
of persons and passengers having business with it.
Otherwise, persons, who have no business with the rail-
road company, at all, could establish ways, which the
company would be compelled to maintain in a safe con-
dition to any kind of distance from its depot, as the rail-
road company is practically powerless to prevent per-
sons from walking, at will, upon its right of way, al-
though its servants might have knowledge of the use
made by them of the right of way. In the present in-
stance, if the railroad company is required to keep the
pathway upon its right of way in a safe condition for
six hundred feet, as is insisted, would not the same ob-
ligation rest upon it, if the path extended along its
track for a mile, and persons walked upon it, who in-
tended to become passengers upon the road, at the depot,
as well as others, who have no business with the rail-
road company, and would not the same reason make the
company liable to the appellant for an injury upon such
a way, one mile from the depot, as it would be within
one hundred and fifty to two hundred and twenty-five
feet of the depot? The only ground upon which it can
be insisted that persons traveling the pathway, do so by
invitation is, that the use has been with the knowledge
of the railroad company, and for that reason, the law

presumes an implied invitation, and while this might be true, if the pathway was on the depot premises, which was set apart for persons having business with the railroad company, it is well settled, that acquiescence on the part of a railroad company, in the use of its right of way set apart and exclusively used by it for the operation of its trains, does not confer any authority or right upon the persons so using it, and does not result in any right by prescription, the use being merely permissive, and the company may, at any time, close up a pathway along its right of way used and set apart for the operation of its trains. Brown's Admr. v. L. & N. R. R. Co., 97 Ky. 228; Thornton v. L. & N. R. R. Co., 191 R. 96; C. & O. Ry. Co. v. Perkins, 20 R. 680; Embry v. L. & N. R. R. Co., 18 R. 434; I. C. R. R. Co. v. Waldrop, 24 R. 2127; C., N. O. & T. P. Ry. Co. v. Hughes, *supra.* Hence, the appellant, in the present instance, could, at any time, withdraw its license for the use of the pathway along its right of way, and the setting up of the derail was, in part, such revocation, and the company could not be considered to have acquiesced in the use of the pathway, except with the derail by the side of it. This left free passage for a width of seven feet between it and the ditch. If the accident to appellant had occurred shortly after the derailing device had been instituted, another question would have been presented, but not having occurred until after five years, and after the general public had full opportunity for notice of it, there is no ground for an action for damages, as existed in L. & N. R. R. Co. v. Schneider, *supra.* The appellant, although having business with the railroad company, did not necessarily have to travel the path, but did so for his own convenience in getting to the station, rather than to use any route over the depot grounds, which was probably not so convenient. It is true, that if the entire lot upon which the depot is situated should be considered the depot premises, the right of way of the railroad company upon which this path is located, at this point of the injury, adjoins the lot upon which the depot is situated, and for several hundred feet beyond that point, but it is separated from the depot premises by a ditch, several feet in width, and while the depot premises were set apart by the railroad company for the use of its passengers and persons having business with it, the railroad right of way was set apart for no

other purpose nor is it used for any other purpose by the railroad, except the operation of its trains. In the case of L. & N. R. R. Co. v. Hobbs, 155 Ky. 130, the question of what was the status of an individual who had been a passenger upon the railroad, when she left the depot premises and was proceeding homeward along a path upon the railroad right of way, which had been continuously in use for twenty-five or thirty years, by persons having business with the railroad, in going to and from the depot and by the general public in traveling to and fro upon their own business and pleasure, as the pathway was used, in the instant case. A woman was a passenger upon the railroad and arrived at her destination, in Bloomfield, on a very dark night. As such passenger, the railroad company owed her the duty of maintaining the route of egress from the depot in a reasonably safe condition for her use. A pathway ran from the depot along the right of way of the railroad to a point on the right of way, which was three hundred and forty-five feet from the depot, at which place there was an excavation for a turntable, which was not guarded or lighted. The pathway had been in general use by the public for twenty-five years or more, in traveling to and from the depot, by passengers and other persons, as well as those having other matters of business and pleasure with the knowledge and acquiescence of the railroad company. She lost her way in the dark and fell into the excavation. This court denied her a recovery of damages, upon the ground, that after she left the depot and was traveling the path, although upon the right of way of the railroad, and although the pathway had been used for a time sufficiently long and by a sufficient number of persons, and with the knowledge and acquiescence of the railroad company, to make persons upon it licensees, that she was a mere licensee, and not having been injured by any positive act of negligence of the railroad company, in the operation of its trains upon its right of way, and as the licensee must take the premises of the licensor as he finds them. In that case it was said:

"But no part of the path appellee was traveling, after she left the premises about the depot, had been set apart by the company for the use of the public or for the use of persons having business at its depot buildings, nor had it invited the public to use this passway. It

was used by people generally in going to stores, to school, in visiting and on other purposes of business and pleasure, as well as by persons in going to and from the depot. The use of this way by the public was in its origin a trespass, but by continually using it without objection on the part of the company, the public using it came to have what is called a license to use it, and the company thereby became charged with the duty railroad companies owe to licensees.

"And so we think that appellee's right to recover, if any there be, must rest entirely upon the naked grounds that the company, on account of the long continued and habitual use of this passway by the general public, assumed the duty of keeping it lighted in some way or having the turntable protected by lights or barriers, so that persons using the passway might not thoughtlessly or inadvertently fall into the excavation as appellee did. If the company did not owe to appellee as a licensee this duty, then she is not entitled to a recovery."

The liability of a railroad company to one, who has been a passenger and is proceeding from the depot premises to his home and the liability to one, who is proceeding to the depot for the purpose of becoming a passenger is not different. In the instant case, the pathway was upon the railroad right of way, and the point of the injury was from one hundred and fifty to two hundred and twenty-five feet from the depot, but not upon the depot premises, and in the case of Hobbs, *supra,* the pathway traveled was upon the railroad right of way and the point of injury was three hundred and forty-five feet from the depot, and in both cases, however, they were upon the property belonging to the railroad, and which was connected with the depot premises by paths, which ran upon the right of way of the railroad, and continued thereon to the depots. The appellant being at the time and place of his injury a licensee, must take the premises of the licensor as he found them, and can not recover damages on account of an injury received by him because of the unsafe condition of the path upon the right of way.

Hence, the judgment is affirmed. The whole court sitting.