**CHICAGO, R. I. & G. RY. CO. v. TAYLOR. (No. 9233.)**

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 6, 1920. Rehearing Denied Dec. 4, 11, 1920.)

1. **Appeal and error** ⟜209(1)—**Party who did not object to submission of issue can complain of insufficiency of evidence.**

Though defendant did not object to submission of an issue to the jury, it had the right to complain in its motion for new trial and on appeal of the sufficiency of the evidence to support the jury's finding on such issue.

2. **Carriers** ⟜286(4)—**Railway not under duty to light pathway which was not only practical way to depot.**

Where the usually traveled and apparently safe way between railroad depot and public road was a well beaten and defined walk between the main and switch tracks, it cannot be said that the pathway leaving that walk only a few feet from its junction with the public

road, running diagonally across the switch track over the end of the culvert where deceased was injured, was the only practical way for him to reach the public road from the depot, so that the railroad owed duty to the public to keep such way in suitable condition for such use, or to provide lights for the guidance of those passing over it after alighting from a passenger train.

**3. Carriers ⬅286(7)—Railroad must keep depot premises safe and lighted.**

A railroad company owes a duty to the traveling public to exercise ordinary care to keep its passenger station buildings and other depot premises set apart for the use of passengers in reasonably safe condition and to light such premises at night when necessary.

**4. Railroads ⬅362(1)—Licensee on right of way for track must take his risks.**

A mere licensee walking upon any part of a railroad's right of way which does not constitute part of the depot grounds, but is set apart for the maintenance of track and operation of trains, must take such right of way as he finds it, and in the absence of invitation by the railroad it owes him no duty to repair defects or light the way, though it knows such use is being made of such way by the public and fails to object, and though persons using it are doing so to reach a station to become passengers or to travel from stations after alighting from trains.

**5. Carriers ⬅318(2)—Evidence insufficient to support finding for passenger's widow on certain issues as to premises.**

In an action against a railroad for death of one who had left its train and was walking along a path to the public road when injured at a defective culvert, evidence *held* insufficient to support finding in plaintiff widow's favor on either of the issues whether or not the place where the accident occurred was on passenger depot premises, and whether or not the railroad had invited the traveling public to use such place for ingress to or egress from its station.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by Mrs. Zena Taylor against the Chicago, Rock Island & Gulf Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Lassiter & Harrison, of Ft. Worth, for appellant.

Ocie Speer, of Ft. Worth, Stuart & Rattikin, of Ft. Worth, Peden & Peden, of El Paso, and Levi Pressly, of Ft. Worth, for appellee.

DUNKLIN, J. On November 14, 1917, C. L. Taylor, a passenger on the Chicago, Rock Island & Gulf Railway, alighted from one of its trains at a small passenger station called Hurst. It was about 9 o'clock at night when the train stopped at Hurst, and the night was dark. As soon as the train left the station, Taylor started walking east to a public road which ran north and south across the rail-

way track, and led to the home of his brother residing in the town of Hurst, which was his destination and was where he spent the night. The public road was some 150 feet or more from the station mentioned. North of the main line of railway track and practically parallel with it there was a switch track which ran east and west and extended up to the public road. The ground between this switch track and the main track was used as a walkway for passengers going to and coming from the station where trains stopped to take on and discharge passengers, the public road being used for travel before entering upon said walkway by those going to the station and by those leaving the station after they had passed over such walkway and had reached the public road.

There was a small culvert for the escape of water constructed under the switch track approximately 12 or 15 feet west of the public road. This culvert was constructed of plank in the shape of a long box, and the ends of it extended beyond the switch track on either side. A board was off the top of one of these ends of the culvert, thus leaving a hole or opening in that end. When Taylor reached the station on the night in controversy, he started walking in the walkway between the main track and the switch track above mentioned. He followed that walkway to a point near the public road, when he encountered some coal or other obstruction, and in order to avoid stumbling over the same he turned in a northeasterly direction and crossed the switch track, and after crossing the same he stepped with one foot into the hole in the end of the culvert described above. Stepping into that hole caused him to fall, and as his foot went down on the inside of the opening some foreign object, perhaps a splinter or nail, stuck into his foot and injured it. He suffered from that injury for several days, although during that time he was able to walk around to some extent, but finally lockjaw developed from the injury so received and caused his death.

This suit was instituted against the railway company by Mrs. Zena Taylor, widow of C. L. Taylor, for herself and as next friend for the three minor children of herself and the deceased, to recover damages sustained by reason of the death of C. L. Taylor, and from a judgment in favor of the plaintiff the defendant has appealed.

Plaintiff's suit was based upon allegations of negligence on the part of defendant which was the proximate cause of the death of C. L. Taylor in two particulars: First, in failing to light the place where the deceased fell and received his injury, either by providing sufficient light at its depot or along the walkway between the depot and the public highway; it being alleged in that connection that said walkway was the only means of ingress

to or egress from said depot, and was used by the public daily as its means of passage to and from said depot, all with the knowledge and consent of the defendant. Second, in permitting the end of the culvert to remain open in the manner above explained, thereby endangering the safety of the public while using the premises in the usual and ordinary course of travel to and from the defendant's depot; it being further alleged that such dangerous condition of the culvert was known to the defendant, its agents and employés, or that the same could have been known by the use of reasonable diligence.

In addition to a general denial, the defendant also pleaded contributory negligence on the part of C. L. Taylor in attempting to reach the public road by passing over the switch track at the place he fell instead of following the beaten walkway above mentioned to the public road, which was entirely safe to travel.

The case was submitted to a jury upon special issues, in answer to which the jury found in plaintiff's favor on both issues of negligence alleged in her petition and also found against the defendant on its plea of contributory negligence of the deceased.

Upon the trial the defendant duly objected and excepted to the submission of the special issue of its alleged negligence in failing to provide light sufficient to enable the deceased to discover the open end of the culvert before he stepped into it, on the ground that the evidence failed to show that the accident occurred on the defendant's depot ground or at a place where the defendant was under any legal obligation to maintain a light.

[1] Appellant has also challenged the sufficiency of the evidence to support the jury's finding of negligence on the part of the defendant in permitting the end of the culvert into which deceased stepped to be uncovered and thereby rendering it unsafe for persons to pass over it under the conditions and circumstances surrounding the deceased at the time. Although defendant did not object to the submission of that issue to the jury, it still had the right to complain in its motion for a new trial of the insufficiency of the evidence to support the jury's finding of such negligence, as was done, and this contention is properly presented in one of the assignments of error in this court. Electric Exp. & Baggage Co. v. Ablon, 218 S. W. 1033, decided by our Supreme Court; St. L. S. W. Ry. Co. v. Horne, 105 Tex. 135, 145 S. W. 1186.

Prior to the institution of the suit, the depositions of C. L. Taylor were taken, under the provisions of article 3651, V. S. Tex. Civ. Statutes, in order to perpetuate his testimony. He testified that he had gotten off the train at Hurst station once before in the daytime, but had never alighted from the train at that station at night prior to the occasion of his injury. He testified that it was a dark night, and that there was no light at the depot that night, and that he could not see the hole until he stepped into it, but further testified on cross-examination:

"If there was a light in the station, I couldn't see any at all; no light there I know; might have been a little lamp in the station, but I did not see it."

He further testified that the public road was 30 or 35 yards east from the station, and no other witness estimated that distance at less than the estimate so given by him. W. P. Williams, claim agent for the defendant, testified that the distance from the depot to the public road was 240 feet, and that from the west edge of the public road to the culvert underneath the switch track was about 15 feet, leaving the distance from the depot to the culvert at a little over 225 feet. According to the testimony of C. L. Taylor, the culvert was at least 12 feet west of the public road. Williams further testified that he was familiar with the station and that the defendant had an agent at the station at the time of the accident; that a lamp was provided to light the station, and it was fastened to the outside of the station building; that the lamp was an oil lamp of rather good size with a large reflector behind it; that the lamp would throw a light across the platform and light up the immediate surroundings for a radius of 50 feet on each side of it. It thus appears that, according to testimony offered most favorable to the defendant, the place where the accident occurred was approximately 140 feet from the station; and, according to testimony offered most favorable to the plaintiff, the lamp furnished at the station did not light the ground at the immediate place where the accident occurred. The proof further showed without controversy that the town of Hurst is a small village containing not more than 12 or 15 residences.

According to further proof offered by plaintiff, the well beaten and traveled pathway between the main track and the switch track running from the public road to the depot was the only practical way for ingress to and egress from the depot, and that the same had been used for that purpose by the public for a number of years, and such public use was sufficient to show a knowledge of such use on the part of the defendant's employés. But notwithstanding that testimony, no witness testified, nor do the photographs in the record show, that there was any obstruction or unevenness of ground which could prevent access to the depot across the north switch track from the school grounds lying north of that track, or from the south across the south switch track.

[2] At all events, since the usually traveled and apparently safe way of travel between the depot and the public road was the well beaten and defined walkway lying between the main track and switch track and extending from the depot to the public road, it can-

not be said that the pathway leaving that walkway only a few feet from its junction with the public road running diagonally across the switch track over the end of the culvert where deceased was injured was the only practical way for him to reach the public road, and that therefore defendant owed the duty to the public to keep it in suitable condition for such use or to provide lights for the guidance of those passing over it after alighting from one of its passenger trains.

Witnesses for the plaintiff testified that it was a common occurrence for people going to or coming from the depot to cross the switch track at an angle at the place where he crossed the culvert; in other words, that persons coming to the depot would frequently make a near cut from the public road across the switch track at an angle into the walkway between the tracks leading to the station, and persons leaving the station would frequently travel the walkway until they reached a point practically opposite the culvert, then make a near cut, and cross the switch track at that place into the public road, instead of following the walkway all the way to the public road. According to the testimony of those witnesses, persons so crossing the switch track had made a regular pathway following the route so taken, which pathway could be plainly seen, and that that pathway had been so used for several years. No evidence was introduced to show that the defendant company ever constructed and maintained the pathway so used for such use by the public.

[3, 4] It cannot be doubted that a railroad company owes the duty to the traveling public to exercise ordinary care to keep its passenger station buildings and other depot premises set apart for use of its passengers in a reasonably safe condition for such use, and that lighting such premises at night when necessary is included in that duty. 4 Elliott on Railroads (2d Ed.) § 1590a. It is equally well settled that a mere licensee walking upon any part of the railroad right of way, which does not constitute any part of the depot grounds but is set apart and used by the company exclusively for the maintenance of its track and the operation of trains, must take such right of way as he finds it, and, in the absence of any invitation by the company for such use by the public, the company owes him no duty to repair defects therein or light the same on dark nights merely for the purpose of making the right of way safe or convenient for such use by him. And neither the fact that the railroad company knows that such use is being made of such right of way by the public and fails to object thereto, nor the fact that persons so using it are doing so as a way to reach a station for the purpose of becoming passengers upon trains or for the purpose of travel from stations after alighting from trains, makes any difference. St. L. S. W. Ry. Co. v. Spivey, 97 Tex. 143, 76 S. W. 748; Barker v. St. L. S. W. Ry. Co., 141 S. W. 298; Nashville, C. & St. L. Ry. Co. v. Lovejoy, 138 Tenn. 492, 198 S. W. 61, and authorities there cited; Bales v. L. & N. Ry. Co., 179 Ky. 207, 200 S. W. 471.

[5] The jury was not specifically instructed to find whether or not the place where the accident occurred was on what could properly be termed the company's passenger depot premises or grounds, nor whether or not the company had invited the traveling public to use it for the purpose of ingress to or egress from its passenger station. The evidence introduced, as shown in the record, was insufficient to support a finding in plaintiff's favor on either of those issues, and they were of the essence of, and were necessarily included in, the general issues of negligence submitted, namely, the issue of negligence, vel non, in failing to light the place where the accident occurred, and the further issues of alleged negligence on the part of the defendant in permitting the end of the culvert to be uncovered and thereby to make it dangerous for one crossing over the switch track at that place in the dark.

Furthermore, while there was evidence sufficient to support a finding that there was a well-marked pathway of travel across the switch track where the accident occurred and leading in a northeasterly direction from the walkway between the main track and the switch track to the public road, and that such pathway had been used and marked for several years prior to the accident, yet we have failed to find any evidence in the record tending to show how long the board had been off the end of the culvert into which deceased stepped on the occasion in controversy, nor have we found any other evidence to show that the defendant had any knowledge of the opening in the culvert prior to the time of the accident.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded.

BUCK, J., absent, not sitting.

### On Motion for Rehearing.

DUNKLIN, J. To be more specific, and to answer a criticism of appellee, we will add that we intended to and did sustain both the assignments of error discussed in our opinion on original hearing, for the reasons therein given.

The motion for rehearing is overruled.

BUCK, J., not sitting.