## Davis, Agent, etc. v. Anderson's Administratrix.

(Decided May 8, 1925.)

### Appeal from Knox Circuit Court.

Railroads—Railroad Held to Owe no Duty to Repair Track to Prevent Injury to Licensee by Derailment.—Railroad owed no duty to decedent killed at point on its right of way, where he, because of use of right of way as a walkway, had status of a bare

licensee, to repair its track at point where he had no right to be classed as a licensee of any kind, and thus prevent derailment causing accident after derailed car had traveled some distance.

WOODWARD & WARFIELD, BLACK, BLACK & OWENS and JOHN MARSHALL, JR., for appellant.

SAWYER A. SMITH, R. N. JARVIS, JAMES S. GOLDEN and B. B. GOLDEN for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

A derailed car in a north-bound freight train, a short distance north of Immanuel station on the line of the L. & N. R. R. Co., in Knox county, having run along the ties for some distance when it reached an intersection between the main line upon which it was running and a side track, went off on to the side track and there collided with some empty cars thereon, and caused one of them to fall over or upon Robert Anderson, who was at the time either on the side track or near to it, and he was killed. The derailment of the freight car had occurred at a point a short distance south of the Immanuel station, and it had run along on the ties until it came to the intersection about 100 feet north of the station.

Decedent's home was about a quarter of a mile north of the station, and in its vicinity a number of families lived, all of whom in going to and from the station, for a long period of time, had used the railroad right of way as a footway, because, as claimed, the parallel county road had been overflowed and washed out by high waters until it was impassable, or practically so.

The decedent was going on Sunday morning from his home to attend church near the station, and it will be assumed for the purposes of this opinion that the evidence of the use of the right of way by him and others had been to such an extent, and for such a length of time, as converted him in its use to a licensee rather than a trespasser. But, as it is conceded he was neither a passenger nor employe, nor at the time engaged in any business with or for the railroad company, he was in fact a bare licensee.

There was no eye-witness introduced showing exactly how his death came about; he was seen a few minutes before his body was found under the car and between the rails of the side track, going toward the station from his

home. However, there were two witnesses introduced who saw the car derailed south of the station, and saw it bumping along the ties until it came to the intersection with the side track, and saw it run into the side track and collide with the other cars; but neither of them saw the decedent at the time, or until after his injury. It is apparent that the derailment of the car south of the station was the proximate cause of the collision between the freight car and the empty cars on the side track north of the station which caused decedent's death. There is evidence that at the point where the car was derailed south of the station the track was and had been for some time in bad condition, and would rise and sink as the cars passed over it, and caused them to rock, and this appears to be the only negligence which had any causal connection with the death of Anderson.

On a trial of this action by his personal representative for damages a verdict was returned for plaintiff in the sum of $15,000.00, upon which judgment was entered, and the court declining to grant a new trial, this appeal results.

The only question necessary to be considered, and the only one which will be considered, is whether defendant was entitled, under the facts stated, to the directed verdict for which it asked. Whether this inquiry shall be answered in the affirmative depends primarily upon what duty, if any, the defendant owed to the decedent at the time and place of his injury, he at the time being a bare licensee; for, unless it owed him the duty to keep its main line in repair at a point south of the station where the derailment occurred, and which we have seen was the cause of the death, then there can be no recovery and the peremptory should have gone.

Keeping in mind that decedent was killed at a point on the company's right of way where he and others, because of the use by them of the right of way as a walkway, had acquired the status of a bare licensee; and keeping in mind the fact that his death resulted from the company's failure to keep in proper repair its track at a point where decedent had not acquired by use the right to be classed as a licensee of any kind, the direct question is whether the company owed to him, a bare licensee, as to a part of its right of way the duty to maintain for his protection its tracks in proper repair upon another and different part of its right of way.

Even if the derailment had occurred on the main track at a point where decedent had acquired the status of a bare licensee, and he, while on a parallel or nearby side track, had been killed by the derailment of a car on the main track on account of defective equipment, there could have been no recovery; for, in the very recent case of Robinson's Admr. v. L. & N. R. R. Co., 199 Ky. 694, the question was expressly decided. In that case a bare licensee was upon a spur track running approximately parallel with the main track when a freight train came along on the main track, and because of defective equipment one of the cars in the freight train jumped the track and fell upon the licensee on the spur track and killed him; and the court in an instructive opinion reviewing all of the authorities in this state held there could be no recovery.

The only difference in that case and this is (1) there the injury was caused by defective equipment, and (2) the derailment occurred at a place where the licensee had a right to be in the exercise of his license. We can see no distinction between a duty owed to a licensee to maintain equipment so as to prevent a derailment, and one to maintain trackage so as to prevent such derailment.

One is as essential to the safe operation of trains as the other. And so far as the other distinction between the two cases is concerned manifestly the advantage was with the plaintiff in the Robinson case over the plaintiff in this case; for, if the company did not in the Robinson case owe the duty to the licensee to maintain its equipment in good repair so as to prevent the derailment and consequent injury to him while he was on the spur track at a point where he was exercising his license, manifestly less duty rested upon the company to maintain its tracks in safe condition for the benefit of a licensee at a point to which his license did not extend, even though the failure so to do resulted in an injury to him at a nearby point on its right of way to which his license did extend.

In that case the spur track upon which the decedent was walking ran out toward a section house occupied by a section foreman and owned by the company; there was no other way of ingress and egress to this section house, and the foreman living there had, with the knowledge of the company, for many years been the agent for the sale of a newspaper, and the decedent was at the time of the accident returning from that place where he had gone to get a newspaper when he was killed.

The court in denying a recovery said:

"But if it should be conceded that the company was required to furnish its tenant with a way of ingress and egress, and thus permitted him, his family and guests to travel the spur, would that require the company to maintain its other tracks and all its equipment with reference to such use of this spur track, or would its duty to those traveling thereon consist in using odinary care in the operation of its trains to avoid injury to them while so using it? This question seems to have been answered in the case of Sage v. Creech Coal Co., 194 Ky. 418, in which a distinction was also drawn between an invitee and a bare licensee."

It will be observed that the court there made no distinction between the duty of the company to maintain all of its equipment in repair, and to maintain "its other tracks" in repair.

In the Sage case referred to it was held that a failure by the owner to exercise ordinary care to maintain a trestle, and appliances used in connection therewith, in a reasonable safe condition is not actionable negligence toward one who is accustomed to use the trestle for a walkway as a bare licensee.

We have found no case in this state having a state of fact exactly similar to this, the Robinson case quoted being the nearest; but analogous principles have been enunciated in the following cases wherein the facts were somewhat similar, to-wit: L. & N. R. R. Co. v. Marlow, 169 Ky. 140; Sage's Admr. v. Creech Coal Co., 194 Ky. 415; Bales v. L. & N. R. R. Co., 179 Ky. 207; Rabe v. C. & O. R. R. Co., 190 Ky. 255.

Having reached the conclusion in the light of these authorities that the company owed no duty to decedent to keep in repair that part of its line south of the station at Immanuel, so that he might safely exercise his license on that part north of the station, it results that there can be no recovery, and that the directed verdict should have been given. It is not, however, meant by this to intimate that it was the company's duty even at the point where decedent might exercise his license, to keep in repair its main track so as to prevent an injury to decedent while on a side track.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.